### In re TYGARTS RIVER COAL CO.

#### (District Court, N. D. West Virginia.   February 7, 1913.)

1. BANKRUPTCY (§ 115*)—RECEIVER—RIGHT TO MAINTAIN ANCILLARY PROCEEDINGS.

Temporary receivers appointed for an alleged bankrupt corporation before adjudication have no such interest as entitles them to institute ancillary proceedings in the court of another district to secure a confirmation of their appointment and be put in possession of property of the corporation in such district.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 165; Dec. Dig. § 115.*]

2. BANKRUPTCY (§ 16*)—CORPORATIONS—JURISDICTION OF COURT—"PRINCIPAL PLACE OF BUSINESS."

A corporation engaged in the business of mining and selling coal whose lands and mining operations are all in the state by which it is chartered is not subject to bankruptcy proceedings in another state, although it may maintain its principal office there, which does not in such case constitute its "principal place of business."

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 20; Dec. Dig. § 16.*

For other definitions, see Words and Phrases, vol. 6, pp. 5559, 5560.]

In the matter of the Tygarts River Coal Company, alleged bankrupt.   On ancillary petition by receivers.   Petition denied.

John L. Hechmer and W. R. D. Dent, both of Grafton, W. Va., for receivers.

DAYTON, District Judge.   The Empire Coal Mining Company, a corporation, R. A. Shillingford and William A. Webb, creditors, have filed as of the 29th of January, 1913, in the Eastern district of Pennsylvania their petition, verified and in usual form, charging the Tygarts River Coal Company to be bankrupt.   Upon this petition an order to show cause has been entered returnable February 13, 1913. Webb, one of the petitioners, has also filed in the same court his sepa-

rate petition asking for the appointment of receivers to take charge of and operate the mine of the alleged bankrupt in Barbour county, W. Va., and upon motion of creditors the Real Estate Title Insurance & Trust Company of Philadelphia and William Morgan were on February 3, 1913, appointed by the District Court for the Eastern District of Pennsylvania such receivers. These receivers have presented to me their petition with which they tender a certified copy of the proceeding above referred to had in the District Court for the Eastern District of Pennsylvania and pray the entry and confirmation by me in this district of that court's order of their appointment. After mature consideration, this I feel compelled to decline to do for two reasons:

[1] First. I do not think the temporary receivers appointed in bankruptcy, pending the election of a trustee, have such interest in the controversy as warrants them to institute in this court of different jurisdiction an ancillary proceeding to secure its aid in confirming their appointment and securing for them the custody of property in this district. Their appointment is merely temporary; they are presumed to be wholly disinterested parties, not creditors, directors, stockholders, officers of, or in any way interested in the affairs of the bankrupt; therefore such ancillary proceeding cannot in my judgment be instituted by them. 2 Loveland on Bankruptcy, 120; Whitney v. Wenman, 198 U. S. 539, 25 Sup. Ct. 778, 49 L. Ed. 1157; Great Western Min. Co. v. Harris, 198 U. S. 561, 25 Sup. Ct. 770, 49 L. Ed. 1163; In re Nat. Mer. Agency (D. C.) 128 Fed. 639.

[2] Second. The above objection may be regarded as technical, and based upon it alone I might hesitate to deny this application. Independent of it, I am fully convinced that the District Court for the Eastern District of Pennsylvania, sitting in the city of Philadelphia, has no jurisdiction to entertain the petition filed in it to have the alleged bankrupt adjudicated as such. It is set forth in the petition of the receivers here and in the petitions filed in the Philadelphia court that the alleged bankrupt is a corporation chartered under the laws of the state of West Virginia; that it is engaged in the business of mining and selling coal; that its coal land and mining operations are wholly in the state of West Virginia, but, it is alleged, its principal office is situate in Philadelphia. Ever since the decision of Bank v. Earle, 13 Pet. 519, 10 L. Ed. 274, it has been settled that a corporation can have no legal existence outside the boundaries of the sovereignty by which it is created; it exists only in contemplation of law, and by force of the law; and when that law ceases to operate, and is no longer obligatory, the corporation can have no existence; it must dwell in the place of its creation, and cannot migrate to another sovereignty. Its operations in other states or sovereignties are purely permissive on the part of such other states, and such permission may at any time be withdrawn by them.

The Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420]) provides that the petition shall be filed in the district in which the "principal place of business" of the corporation is situate.

I am not ignorant of the fact that some of the federal courts have construed this phrase "principal place of business" to be the place where its chief officers reside and maintain an office; but in my judgment the determination of the question of where the principal place of business is depends upon where the actual business of the concern is transacted. It is a question of fact to be determined in each particular case largely on the character of the corporation, its purposes, and the kind of business it is engaged in. As regards a coal mining corporation like this, it is very evident that the basic necessity for its doing business at all is to have somewhere a body of coal, owned or leased, from which it may mine and ship coal. It is not sufficient for the officers of such a corporation to gather together in a city office and call it "the principal place of business" of the concern because it better suits their convenience to live and meet in such city. Unless the coal exists in place somewhere else to be mined and shipped to consumers, such city organization cannot exist. It is purely incident to and dependent upon the practical mining operations, "the doing of business" elsewhere. The fact that such city organization may control the company's sale of the coal cannot avoid the inevitable conclusion. In such case the city office becomes only the agent of the corporation for a limited purpose, that of selling what cannot be sold until it has first been elsewhere mined, prepared for, and shipped to, market for sale. It is very clear that it was not the purpose of the bankrupt law to either discriminate against, suppress, or destroy the rights of creditors; nevertheless, for a court in bankruptcy sitting in a city far distant from where the corporation's property is situate and its practical operations are conducted to assume jurisdiction is, in every case, calculated to accomplish that very thing. To illustrate: Let us assume that the alleged bankrupt here has acquired its coal holdings by purchase, as is generally the case, from numerous farmers. Coal in place in West Virginia is real estate, and title in fee thereto can be acquired only by deed. These deeds are of record in the county in West Virginia wherein the coal purchased is situate, not in the city of Philadelphia. Assume that the company has not paid in full for the coal, and that vendors' liens have been retained by the farmers upon the several tracts of coal sold by them to the company, to secure unpaid purchase money. In some companies 40 to 100 different conveyances may have been made under such conditions; each vendor having such lien. Finally let us assume, what would be entirely true in many cases, that the company in bankrupt condition had suffered judgments to be recovered and docketed against it and was indebted to many local people at its mines for labor, material, and merchandise. All these farmers, merchants, laborers, and lienors would have to go to Philadelphia (it could be as well to San Francisco) to have their claims and liens adjudicated, solely because the officers of the corporation saw fit for their convenience to establish an office in such distant city, and call it the company's "principal place of business." I cannot for a moment believe that Congress ever contemplated such a construction of its act, nor can I for a moment believe the language of the act itself can be warped by construction so as to create or justify such a condition of affairs.

I therefore decline to entertain the receivers' petition in ancillary proceeding, and I decline, until my conclusions herein are by a higher court held to be erroneous, to recognize that the District Court for the Eastern District of Pennsylvania has any jurisdiction in the premises.