**In re HUDSON RIVER NAV. CORPORATION.**

**In re CITY BANK FARMERS' TRUST CO.**

**In re UNIVERSITY BAKERY, Inc.**

**No. 446.**

Circuit Court of Appeals, Second Circuit.
June 13, 1932.

See, also, 57 F.(2d) 175.

Hudson River Navigation Corporation is a Delaware corporation which maintains an office in Wilmington, Del., to comply with the requirements of the statute of that state, but has had no property and has done no business in Delaware. It was organized in 1926 to take over the business of Hudson Navigation Company. It purchased its assets at a foreclosure sale. The Hudson Navigation Company had been engaged in the business of transporting passengers by water on the Hudson between New York City in the Southern district of New York and Albany in the Northern district. It also transported freight by water between New York City and Albany and Troy in the Northern district. The successor corporation continued the same kind of business.

On January 18, 1932, at about 10:20 in the morning, the City Bank Farmers' Trust Company, as trustee, filed its bill of complaint in the office of the clerk of the District Court for the Southern District of New York in an action brought to foreclose a mortgage covering property of the Hudson River Navigation Corporation. Before half past 10 that day a subpœna was issued in that suit and duly served on the mortgagor "at about 1:15 or 1:20 in the afternoon" of that day according to the return of the marshal who made the service. That afternoon the District Court for the Southern District appointed a receiver of the mortgaged property.

That same afternoon the Hudson River Navigation Corporation filed its voluntary petition in bankruptcy at 1:20 o'clock in the office of the clerk of the District Court for the Northern District of New York. The time of the service of the subpœna in the foreclosure suit was disputed by affidavit, and the claim made that it was a few minutes after the petition in bankruptcy was filed. As will become apparent, this dispute as to time will not be important.

Acting on the bankruptcy petition, the District Court for the Northern District appointed a receiver in bankruptcy the same afternoon and entered an order enjoining all suits against the bankrupt and any interference with its property. The receiver took possession forthwith of all the property of the petitioner including the property covered by the mortgage and located in the Southern district. The next day the petitioner was adjudicated a bankrupt. Ancillary receivers in bankruptcy were appointed by the District Court for the Southern District on January 28, 1932. On February 9, 1932, a trustee was elected and qualified. On January 30, 1932, creditors of the Hudson River Navigation Corporation had filed an involuntary petition in bankruptcy against it in the District Court for the Southern District of New York.

The City Bank Farmers' Trust Company filed a petition, which was verified February 4, 1932, in the Northern District Court, to have the adjudication in bankruptcy vacated and all proceedings in that action set aside on the ground that the court was without jurisdiction; to have the restraining order modified to permit the prosecution of the foreclosure action; and to permit the mortgage trustee to collect a condemnation award for a pier taken by the city of New York. By a petition verified February 3, 1932, the creditors who filed the involuntary petition in bankruptcy in the Southern district sought to have the adjudication in bankruptcy in the District Court for the Northern District vacated for lack of jurisdiction.

The District Court for the Northern District refused to vacate the order of adjudication, granted the prayer to permit collection of the condemnation award, and refused, except on conditions imposed and not accepted, to permit the prosecution of the suit to foreclose the mortgage.

Leave to appeal was granted to the trustee under the mortgage and to one of the petitioning creditors.

Woollard & Cogan, of Albany, N. Y., for bankrupt.

George J. Hatt, 2d, of Albany, N. Y., and Allan D. Emil, of Brooklyn, N. Y. (William E. Woollard, of Albany, N. Y., of counsel), for trustee in bankruptcy.

Taylor, Blanc, Capron & Marsh, of New York City (Mansfield Ferry and Henry L. Glenn, both of New York City, of counsel), for appellant City Bank Farmers' Trust Co., as trustee.

Hardie B. Walmsley, of New York City, for University Bakery, Inc.

Before MANTON, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge (after stating the facts as above).

Chapter 2 of the Bankruptcy Act in section 2 (1), 11 USCA § 11 (1), provides, in so far as now material, that courts of bankruptcy shall have jurisdiction " * * * to (1) adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile within their respective territorial jurisdictions for the preceding six months, or the greater portion thereof. * * * "

This bankrupt, being a Delaware corporation, had its residence and domicile in that state. Shaw v. Quincy Mining Co., 145 U. S. 444, 12 S. Ct. 935, 36 L. Ed. 768; Southern Pacific Co. v. Denton, 146 U. S. 202, 205, 13 S. Ct. 44, 36 L. Ed. 942; Dryden v. Ranger Refining & Pipe Line Co. (C. C. A.) 280 F. 257, 259. Accordingly, the jurisdiction of the Northern District Court, which these appellants attack, depends upon its being shown that the bankrupt had its principal place of business for the six months next preceding the filing of the petition or for the greater part thereof in that district. This is a question of fact. Continental Coal Corporation v. Rozelle Bros. (C. C. A.) 242 F. 243; Dryden v. Ranger Refining & Pipe Line Co. supra.

The executive committee of the bankrupt, which was authorized to act for the board of directors and vested with all the rights and powers of the board, by formal resolution authorized the filing of the voluntary petition in bankruptcy, in the Northern district, and the petition filed under such authority alleged that the bankrupt had " * * * its principal place of business and principal office for the greater portion of six months next immediately preceding the filing of this petition at the City of Albany, New York * * * " within the Northern district. Since the management of the corporation thus formally indicated the place it regarded as the principal place of business of the bankrupt, a prima facie case in support of jurisdiction in the court which made the adjudication has been established which casts the burden of evidence upon the appellants. In re Lone Star Shipbuilding Co. (C. C. A.) 6 F.(2d) 192, 195; In re Guanacevi Tunnel Co. (C. C. A.) 201 F. 316.

To meet this it was shown, inter alia, that when the bankrupt purchased the assets of its predecessor in 1926 it was designated in the instrument by which it acquired title as a corporation having its principal place of business in the state of New York in New York City; the mortgage it gave upon its property in May of that year was recorded in the county of New York; coming nearer to date, it was shown that the four principal steamers of the bankrupt were registered in the Port of New York as their home port; its president executed an affidavit on January 7, 1932, in which he gave the principal office of the bankrupt as Pier 52, North river, Manhattan, New York City; its registered place of business in the state of New York was No. 150 Broadway, New York City, but that was the office of the then general counsel of the corporation and none of its business was ever transacted there, though this designation was never changed on the records in the office of the Secretary of State. Moreover, much of the business of the corporation was transacted in New York City where all of the executive officers of the bankrupt had their offices. On the other hand, it was made to appear that about half of the business done originated in the Northern district, where there was a general agent both at Albany and at Troy with the offices and employees requisite to carry on the business done there. In general it may be said that some part of the business at Albany was larger than the similar part at New York City, and some at New York City was greater than the similar part at Albany. Each party to this controversy can, and has, laid emphasis upon the proportionate size of the business at the port where it would put the principal place of business. At Albany a terminal building was leased and used which was much larger and better than the terminal facilities leased and used at New York, while at New York City

the most of the banking was done. And so, in other respects it is thought unnecessary to detail, it has been shown that certain phases of the business were greater at Albany and other phases greater at New York City. No satisfactory solution can be reached by trying to balance one against another, since they were so interrelated that the Albany terminal business and the New York Terminal business were but integral parts of one transportation service between the two cities, each indispensable to the other and not decisively differing in volume.

What seems to us to be the additional facts on which the decision must turn follow: The business solely between Albany and Troy was insufficient to turn the scale one way or the other. It had a terminal at New York out of which came what it transported to its terminal at Albany and a terminal at Albany out of which came what it transported to its terminal at New York. Since what it transported from one end it transported to the other, it is apparent that what may be termed its input at one end equaled its output at the other. To do this work, the course of its passenger vessels lay for about 120 miles within the Southern district and only for about 23 miles within the Northern district, while its freighters went on a few miles farther in the Northern district to Troy. So its operating revenue was mostly earned within the Southern district, since the greater part of the transportation business in which it was engaged was performed there. The executive heads of the corporation who directed and controlled its business did so from their offices in New York City. Under these circumstances, we think the controlling features are that the business of this corporation cannot be separated into component parts, some in one district and some in the other, for it is apparent that it was in effect a two-terminal transportation business and that it was directed and controlled as a unit from its offices in New York City.

In Continental Coal Corporation v. Rozelle Bros., supra, it was held that the principal place of business of a corporation was in Kentucky where most of its business was actually transacted rather than in Tennessee where its executive offices from which its operations were directed and controlled were located. In Burdick v. Dillon (C. C. A.) 144 F. 737, a corporation which owned and operated slate quarries in Vermont and New York was held to have its principal place of business in Boston, Mass., where it had an office from which its business was directed and controlled. But in the Rozelle Case, supra, on which the appellee much relies, the Burdick Case was followed in principle, though distinguished. We think the appellants have overcome the effect of the prima facie case for jurisdiction in the Northern district by showing that the bankrupt was engaged in one indivisible business of transportation from one district to the other, that most of this transportation actually took place in the Southern district, and that all of its business was under the supreme direction and control of its officers whose offices it maintained in the Southern district. This requires holding that the principal place of business of the bankrupt for the six months next preceding the filing of the petition was in the Southern district, a dismissal of the petition in bankruptcy filed in the Northern district for lack of jurisdiction, and the vacating of all orders made in that proceeding. This action will dispose of all other questions involved in this appeal.

Orders reversed.