**SCOT TYPEWRITER CO., Inc., Plaintiff,**

v.

**UNDERWOOD CORP., Defendant.**

United States District Court
S. D. New York.
March 4, 1959.

Bass & Friend, New York City, Solomon H. Friend, New York City, of counsel, for plaintiff.

Simpson, Thacher & Bartlett, New York City, Whitney North Seymour, Jr., New York City, of counsel, for defendant.

WEINFELD, District Judge.

This action, originally commenced in the Supreme Court of the State of New York, was removed to this Court on the defendant's petition alleging diversity of citizenship between it and the plaintiff, a New York corporation.

The plaintiff now moves to remand the action to the State Court on the ground that there is no diversity and that accordingly the requisite federal jurisdiction is lacking.

The motion is based upon the recent amendment to 28 U.S.C. § 1332 which provides that for purposes of diversity jurisdiction, a corporation

"* * * shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."

The plaintiff contends that the defendant, incorporated in the State of Delaware, is in the contemplation of the amended section, also a citizen of the State of New York, where it maintains its executive offices.

The defendant, on the other hand, contends that while its executive offices are in New York, its "principal place of business" is in Connecticut, where its largest production plant is located and where it carries on research and development as well as operational activities.

Congress, in attempting to delimit diversity jurisdiction by decreeing that a corporation was to be deemed a citizen not only of the state of its incorporation but also of the state where it has its "principal place of business", did not define the latter phrase. It did suggest, however, that the Courts were to be guided by decisional law, construing the same language as used in the Bankruptcy Act and other federal statutes.[1]

1. S.Rep. No. 1830, 85th Cong., 2d Sess. 5 (1958); H.R.Rep. No. 1706, 85th Cong., 2d Sess. 4 (1958):
"The proposal to rest the test of jurisdiction upon the 'principal place of business' of a corporation has ample precedent in the decisions of our courts and in Federal statute [sic] such as the provisions of the Bankruptcy Act (11 U.S.C. 11). There is thus provided

■ The question essentially is one of fact, "to be determined in each particular case by taking into consideration such factors as the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations." [2] As is not unusual in this type of situation, one side emphasizes, while the other minimizes, significant factors.

The defendant is a leading manufacturer of typewriters and business machines, as well as other products which are distributed nationally and internationally. It maintains research laboratories for the improvement of its products.

It has three manufacturing plants, the largest of which is at Hartford, Connecticut. All facilities for the production of typewriters and business machines, from original research to the shipping department, are located there. At Burlington, New Jersey, it produces supplies, and its third plant in California is devoted almost exclusively to manufacturing missile and radar components pursuant to Government contracts. The manufactured products are distributed and serviced through branch offices located in over one hundred cities throughout the United States. Its international business is carried on through subsidiaries which handle production operations outside the United States.

The plaintiff, to support its position that the defendant's principal place of business is in New York City, stresses its executive activities there in over-all supervision and coordination of all functional operations. The executive offices of the defendant are located in New York; its President and Chairman of the Board, three of five Vice-Presidents,[3] its Treasurer and Assistant Treasurer, Secretary, Comptroller, Director of Dealer Sales and Director of Installment Sale Collections all maintain offices there. Basic policy decisions are made in the New York office. The personnel, industrial relations, public relations, purchasing, rental and general service, general office sales, international, advertising and sales promotion departments are all headquartered in New York. Customer relations with respect to service, credit, and accounting, affecting sales wherever made, are administered from New York. The corporation's last federal income tax return, for 1957, was filed there.[4]

The activities in New York are such that defendant concedes its New York City office functions on the executive level in the determination of policy and the co-ordination of all of its various activities.

In spite of this, the defendant disclaims New York as its principal place of business. Its basic position is that its principal business is the development and manufacture of typewriters and business machines; that all other phases of its operations are incidental to the primary function. Accordingly, it contends that since its major function, production of typewriters and business machines, is concentrated almost entirely in Connecticut, its principal place of business is located there. It stresses that in Connecticut it has the largest number of employees and the largest payroll, as well as most of its tangible property. It also points out that most of its shipments are made from Connecticut and that most purchases are made within the state.

■ Where a corporation is engaged in multistate activities, with offices, facilities or plants in various states, the issue

sufficient criteria to guide courts in future litigation under this bill." U.S. Code Cong. & Adm.News 1958, p. 3102.

2. Colorado Interstate Gas Co. v. Federal Power Commission, 10 Cir., 142 F.2d 943, 951, affirmed 324 U.S. 581, 65 S.Ct. 829, 89 L.Ed. 1206.

3. The other two Vice-Presidents function at Hartford where they supervise production and related activities.

4. Corporate returns are required to be filed in the district in which is located the "principal place of business or principal office or agency" of the corporation. 26 U.S.C. § 6091(b) (2).

of the location of its principal place of business cannot be resolved by fragmentation of its activities at specific places. It is not answered by a separation of corporate activity into component parts.[5] The issue must be resolved on an over-all basis. It is governed by the totality of corporate activity at a given place, which, to borrow a phrase from another area of law, may be said to represent the "center of gravity"[6] of corporate function.

Defendant's emphasis on the situs of its manufacturing operations as a significant, if not controlling, factor on the ground that typewriter and business machine production is its prime function, is misplaced and quite unrealistic. The business of a corporation, such as the defendant, neither begins nor ends with the manufacture of its product. If it is to engage in profitable operations, an equally important and essential function is the promotion and sale of the manufactured product in the furtherance of the corporate interest.

The defendant's contention that concentration, and the extent, of manufacturing activities is the dominant criterion is refuted by the facts. The defendant, to bolster this argument, emphasizes that most shipments are made from Connecticut, the site of its largest manufacturing plant. This argument falls of its own weight. It appears that in volume of sales last year, California ranked first with $5,700,000; New York was second with $4,700,000; and Connecticut ranked third with $2,100,000. Moreover, it has not been uncommon in recent years for large corporations with production, selling and executive activities in one state to transfer the manufacturing operations to another state for economic advantages, such as special municipal or state tax benefits or more desirable labor markets. The circumstance that all manufacturing, or a large part of it, was relocated in a new state would not necessarily mean that a corporation's principal place of business had been transferred at the same time.

Where a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objective. The test applied by our Court of Appeals, is that place where the corporation has an "office from which its business was directed and controlled"—the place where "all of its business was under the supreme direction and control of its officers".[7]

In the instant case, policy determinations are made in New York; direction and control of corporate affairs, as the function appears to be carried out by executives in New York, is supreme and encompasses every phase of the defendant's activities—production, sales, distribution, advertising, public relations and all other related facets. Under the circumstance, the conclusion is compelled that the defendant's principal place of business is in New York and accordingly there is no diversity jurisdiction.

The motion to remand is granted. Necessarily, this requires granting that part of the motion which seeks to vacate the notice to take the deposition of plaintiff's officers.

5. In re Hudson River Nav. Corp., 2 Cir., 59 F.2d 971, 974.

6. Jansson v. Swedish American Line, 1 Cir., 185 F.2d 212, 218, 30 A.L.R.2d 1385.

7. In re Hudson River Nav. Corp., 2 Cir., 59 F.2d 971, 974. See also Burdick v. Dillon, 1 Cir., 144 F. 737, appeal dismissed 205 U.S. 550, 27 S.Ct. 792, 51 L. Ed. 925. Incidentally, the Hudson River case readily distinguishes Continental Coal Corp. v. Roszelle Bros., 6 Cir., 242 F. 243, strongly relied upon by defendant.