Leo Jack GILARDI, Plaintiff,

v.

ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a corporation, Defendant.

No. 60 C 554.

United States District Court
N. D. Illinois, E. D.
Aug. 26, 1960.

Edward J. Kelley and J. Michael Madda, Chicago, Ill., for plaintiff.

William F. Bunn, Lawrence Lawless and William J. O'Brien, Jr., Chicago, Ill., for defendant.

IGOE, District Judge.

This personal-injury action, based on common law negligence, was commenced in the Town Court of Cicero. It was removed to this court on defendant's petition alleging diversity of citizenship between itself and plaintiff. The case is presently before this court on plaintiff's motion to remand the action to the Town Court on the grounds that: First, the removal was not filed within twenty days after the service of summons and is, therefore, untimely; second, that there is no diversity jurisdiction within the meaning of 28 U.S.C. § 1441, inasmuch as plaintiff, a citizen of Illinois, contends that defendant Santa Fe's principal place of business is Chicago, Illinois.

Briefly stated, the facts are: Plaintiff filed his complaint in the Town Court of Cicero on February 5, 1960. Neither the complaint nor the summons served on defendant on February 15 indicated plaintiff's citizenship or residence. On March 15, defendant served notice to take the plaintiff's discovery deposition. On March 23, plaintiff's discovery deposition was taken and for the first time, defendant ascertained that plaintiff was a citizen of Illinois. The deposition was not filed in the Town Court.[1] On April 11, nineteen days after first ascertaining the citizenship of plaintiff, defendant filed its removal papers stating that it was a citizen of the State of Kansas, where it is incorporated and where it has its principal place of business, and that plaintiff was a citizen of Illinois. Plaintiff subsequently filed his motion to remand.

We turn first to the question of whether defendant's removal was timely under 28 U.S.C. § 1446(b). Plaintiff, in his motion to remand, initially ignored the second paragraph of this section and contended that the petition for removal was filed too late since it was filed more than twenty days after the service of summons. Plaintiff has now abandoned this position and presently contends that defendant's removal is premature.

28 U.S.C. § 1446(b) provides in the second paragraph:

> "If the case stated by the initial pleading is not removable, a petition for removal may be filed within twenty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order *or other paper* from which it may first be ascertained that the case is one *which is* or has become *removable.*" (Emphasis supplied.)

■ Defendant's removal was timely under § 1446(b) inasmuch as it was effected within twenty days after defendant first ascertained that the case was removable. Since the initial pleading failed to state facts indicating whether the case was removable, defendant was entitled to remove twenty days after receipt by it of some pleading or other paper from which it was first ascertained that the case was removable. The right to remove dates from the receipt of the amended pleading, motion or other paper from which it may first be ascertained that the case is removable. Remington v. Central Pacific R. Co., 1905, 198 U.S. 95, 98, 25 S.Ct. 577, 49 L.Ed. 959; Powers v. Chesapeake & Ohio R. Co., 1898, 169 U.S. 92, 101, 18 S.Ct. 264, 42 L.Ed. 673; Stack v. Strang, 2 Cir., 1951, 191 F.2d 106, 107; Higgins v. Yellow Cab Co., D.C.Ill.1946, 68 F.Supp. 453; Morschauser v. American News Co., D.C.N.Y.1958, 158 F.Supp. 517, 519; Cobleigh v. Epping Brick Co., D.C.N.H.1949, 85 F.Supp. 862, 863; Hamilton v. Hayes Freight Lines, D.C. Ky.1952, 102 F.Supp. 594, 596.

■ Plaintiff's discovery deposition taken pursuant to Illinois Supreme Court Rule 19, even though not required to be filed, was a sufficient "other paper" within the meaning of Section 1446(b) from which defendant first ascertained that the cause was removable and defendant had twenty days after so learning to remove the case. Stack v. Strang, 2 Cir., 1951, 191 F.2d 106, 107; Morschauser v. American News Co., D.C. N.Y.1958, 158 F.Supp. 517, 519; Cobleigh v. Epping Brick Co., D.C.N.H. 1949, 85 F.Supp. 862, 863; Hamilton v. Hayes Freight Lines, D.C.Ky.1952, 102 F.Supp. 594, 596.

Plaintiff mistakenly contends that the case may be ascertained to be removable only as a result of some voluntary act on his part. He apparently has confused the situation—where the case stated initially is not removable but later becomes removable because of some voluntary act on the part of the plaintiff—with cases like the one at bar where the case stated always was removable but is not

---

1. Discovery depositions are not required to be filed in the State Courts of Illinois. Ill.Sup.Ct. Rule 19.5(2), Ill.Rev. Stat.1959, c. 110, § 101.19-5(2).

ascertained to be removable until a later time. Cases cited on this point have been misinterpreted by plaintiff, are not in point, and need not be discussed here.

■ Nor does the Court agree with plaintiff's contention that the case may be ascertained to be removable only from some paper filed of record in the State Court. Plaintiff's discovery deposition was part of the judicial discovery process of the State Court. "Other paper" refers to such court processes even though not required to be filed, so long as these papers are part and parcel of the State Court proceedings having their origin and existence by virtue of the State Court processes.

■ This holding is consistent with the policy and purpose of Congress to effect removals as early as possible and avoid unnecessary delay. The filing of such a deposition does not make the fact of diversity of citizenship ascertainable, but the revelation under oath and recording of such diversity does. To hold that the time for removal does not commence to run until such a paper as the deposition is filed in court would be to require an unnecessary action.

The removal having been timely, we now consider whether federal jurisdiction based on diversity of citizenship exists.

■ Since the Santa Fe is incorporated under the laws of Kansas, whether diversity of citizenship exists depends upon whether it has its principal place of business in that State or in Illinois. 28 U.S.C. § 1332, augmenting § 1441, provides that for the purposes of diversity jurisdiction, a corporation:

"* * * shall be deemed a citizen of any state by which it has been incorporated and of the State where it has its principal place of business."

Plaintiff contends that the location of the Santa Fe's executive offices at Chicago is determinative of the question, and supports his position with a list of the railroad's executive officers located in Chicago, as indicated in defendant's Annual Report for 1959. Defendant contends that it has its principal place of business in Topeka, Kansas, as determined by an analysis of the totality of its corporate activity. Defendant supported its position with a twenty-two page affidavit of facts sworn to, among others, by its Auditor, Assistant Secretary, General Manager and General Storekeeper, all located at Topeka. It attached to this affidavit a map of its railway system.

As is not uncommon in these cases, one side emphasizes while the other obscures significant factors. Both cite decisions wherein the courts appear to have emphasized factors which each side contends should control the decision here.

■ In determining the place of a corporation's principal place of business, the issue is a question of fact to be determined in each particular case largely upon the character of the corporation, its purposes, the kind of business it is engaged in, and the situs of its operations. No single factor is determinative of the question. In re Tygarts River Coal Co., D.C.W.Va.1913, 203 F. 178, 180; In re Tennessee Construction Co., D.C.N.Y.1913, 207 F. 203, affirmed 2 Cir., 213 F. 33; Scot Typewriter Co. v. Underwood Corp., D.C.N.Y.1959, 170 F. Supp. 862, 864.

The legislative purpose of Sections 1332 and 1441 is discussed in the Congressional Record of June 30, 1958, at pages 11, 502–11, 509 and is set out in U. S. Congressional & Administrative News, 1958, at pages 3099–3166. By amending Sections 1332 and 1441, Congress was attempting to ease the workload of the Federal Courts and prevent frauds on and abuses of federal jurisdiction, but was not attempting to eliminate:

"* * * those corporations which do business over a large number of States, such as the railroads, insurance companies, and other corporations whose businesses are not localized in one particular State. Even such a corporation, however, would be regarded as a citizen of

that one of the States in which was located its principal place of business." Senate Report 1830, U. S. Congressional & Administrative News, p. 3102.

Congress did not define the phrase "principal place of business", but did suggest that the courts were to be guided by decisional law construing the same language used in the Bankruptcy Act, 11 U.S.C.A. § 11. Senate Report 1830, 1958 U. S. Congressional & Administrative News, pp. 3099, 3102; Scot Typewriter Co. v. Underwood Corp., D.C., 170 F.Supp. 862, 863.

■ Increased importance is placed on decisions construing the Bankruptcy Act to determine the factors to be considered in deciding a corporation's principal place of business. Most of the cases construing this phrase, "principal place of business" under the Bankruptcy Act and Sections 1332 and 1441 are in accord that this finding always has been determined by an analysis of the totality of corporate activity rather than the mere determination of the location of executive offices. Dryden v. Ranger Refining & Pipe Line Co., 5 Cir., 1922, 280 F. 257, 259–260; In re Tygarts River Coal Co., D.C.W.Va.1913, 203 F. 178–180; In re Hudson River Nav. Corp., 2 Cir., 1932, 59 F.2d 971, 974; 8 C.J.S. Bankruptcy § 24 note 75, p. 434.

Some of the Federal Courts have found the principal place of business to be the place where executive officers reside and maintain an office. In re Hudson River Nav. Corp., 2 Cir., 1932, 59 F.2d 971, 974; Scot Typewriter Co. v. Underwood Corp., D.C.1959, 170 F.Supp. 862, 865; Burdick v. Dillon, 1 Cir., 1906, 144 F. 737, 738. But this has never been the sole criterion and other decisions greatly minimize the location of executive offices. Continental Coal Corp. v. Roszelle Bros., 6 Cir., 1917, 242 F. 243, 247; Dryden v. Ranger Refining & Pipe Line Co., 5 Cir., 1922, 280 F. 257–259.

Plaintiff's emphasis on one controlling factor, the situs of the executive offices, is misplaced and unrealistic. As was said in In re Tygarts River Coal Co., D.C.W.Va.1913, 203 F. 178, 180:

"* * * its principal office there * * * does not in such case constitute its 'principal place of business.'

"* * * but in my judgment the determination of the question of where the principal place of business is depends upon where the actual business of the concern is transacted. It is a question of fact to be determined in each particular case largely on the character of the corporation, its purposes, and the kind of business it is engaged in * *. It is not sufficient for the officers of such a corporation to gather together in a city office and call it 'the principal place of business' of the concern because it better suits their convenience to live and meet in such city."

Again, in Dryden v. Ranger Refining & Pipe Line Co., 5 Cir., 1922, 280 F. 257, 259, the court held:

"The business of a corporation is its activities in the acquisition of production of that which its charter authorizes it to produce or acquire, and its dealings with its customers, not its relations with its own employees or officers in its internal government, or in applying to them the checks it may have devised in carrying on its business as security against the improvidence or negligence of agents."

In seeking to equate principal place of business to executive offices, plaintiff relies on Scot Typewriter Co. v. Underwood Corp., D.C.N.Y.1959, 170 F.Supp. 862; In re Hudson River Nav. Corp., 2 Cir., 1932, 59 F.2d 971 and Riley v. Gulf, M & O R. Co., D.C.S.D.Ill.1959, 173 F.Supp. 416. However, none of these cases is authority for the proposition that executive offices is the exclusive factor in determining principal place of business. In Riley, the court merely concludes, upon the facts before it, that the railroad company's principal

place of business was not Illinois, but Alabama, where its principal place of business was located and where, in addition, its executive offices were located. Unfortunately, the court does not review the factors upon which it based its determination of the principal place of business. In both Scot Typewriter and Hudson River Nav. Corp., increased importance was given to the location of executive offices, but this was just one of the many controlling factors. In Hudson River Nav. Corp., the court points out, 59 F.2d at page 974, that the principal factors it relied on in making its determination were that the greatest percentage of the navigable right of way was located, the largest operating revenue was earned, and the executive offices were located within the Southern District. In the instant case, as will be seen from a resumé of the facts, these first two factors favor Kansas. In Scot Typewriter, the court also pointed out, 170 F.Supp. page 864, that it was considering more than the location of the corporation's executive offices. Its decision was also based upon the fact that all phases of the business operation was conducted from New York and that the corporation's last federal income tax return was filed in New York, pointing out that corporate returns are required to be filed in the district in which is located the principal place of business. These factors, when applied to the instant case, also favor Kansas.

█ The facts in this case disclose that Santa Fe is a Class I railroad operating as a common carrier in the transportation of freight, passengers, mail, and express through twelve states over some 13,000 miles of line. Santa Fe was chartered by the State of Kansas and has been closely associated to the commercial fabric of that state for many years. Its principal dealings with its customers and its principal activities are generally carried on in the State of Kansas. In Kansas, the Santa Fe has located its chief railroad facilities for the transportation of mail, passengers and freight. Its general office building at Topeka is occupied exclusively by Santa Fe personnel and contains more than twice the space of the Chicago office building. Its highest percentage of operating revenue, both gross and net, comes from the State of Kansas and is many times larger than that of Illinois. Its operating expenses in Kansas were more than twice those in Illinois. The number of employees in the State of Kansas is more than twice the number employed in Illinois. Its pay roll in Kansas is twice that in Illinois. It has ten times the amount of road in Kansas than it has in Illinois. Its railroad facilities in Illinois for the repair or construction of equipment cannot even begin to compare with those in Kansas. The archives of the company are kept and filed in its general office at Topeka, where the Secretary is located. Almost all of its accounting transactions are recorded at Topeka. Its federal income tax returns are filed in the Kansas office of the Bureau of Internal Revenue. The value of its rolling stock located in Kansas is approximately three times that located in Illinois. The value of its inventory stored at Topeka alone, is approximately sixteen times larger than that of the entire State of Illinois. The amount of taxes accrued for the State of Kansas is more than three times larger than the taxes in Illinois. Its annual stockholders' meetings are held in Topeka. Reports to the Interstate Commerce Commission, including monthly, quarterly and annual reports, emanate from its Topeka office. The actual operation of its Eastern Lines, which includes the States of Illinois and Kansas, is under the control of its General Manager and his two assistants, all headquartered at Topeka.

These facts support only one conclusion: The Santa Fe has its principal place of business in Topeka, Kansas. This conclusion is based upon a thorough analysis of the facts, the legislative history of Sections 1332 and 1441, the decisions construing the Bankruptcy Act, 11 U.S.C.A. § 11, which Congress has directed to be our guide, and the deci-

sions construing Sections 1332 and 1441 since the 1958 amendment.

The result reached in this case is consistent with the intent of Congress. To equate principal place of business to executive offices would not only do injustice to defendants, but would run the risk of creating a substitute fiction for the fiction of charter citizenship.

Inasmuch as the defendant Santa Fe has its principal place of business in the State of Kansas, and plaintiff is a citizen of the State of Illinois, this court has jurisdiction based upon diversity of citizenship.

Plaintiff's motion to remand is denied.