**In re DOCK OF THE BAY, INC., trading as Captain's Quarters, f/k/a the Clipper, Inc., a/k/a Clipper Foods, Inc., trading as Arthur Treacher's Fish & Chips, now trading as Pluto's, Debtor.**

**Bankruptcy No. 182–12488–21.**

United States Bankruptcy Court, E.D. New York.

Nov. 23, 1982.

Grutman, Miller, Greenspoon & Hendler, New York City, for debtor; Stanley B. Hendler, New York City, of counsel.

Barst, Mukamal & Babitt, New York City, for Elkton Associates and Edgewater Partnership, creditors; Roy Babitt, New York City, of counsel.

Royston, Mueller, McLean & Reid, Towson, Md., for Burger Chef Systems, Inc., creditor; Lawrence F. Haislip, Towson, Md., of counsel.

Law Division, Erie Insurance Group, Erie, Pa., for Erie Insurance Exchange, creditor; Natalie A. Dwyer, Erie, Pa., of counsel.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

On September 30, 1982, the above-named debtor filed a petition in this District for relief under Chapter 11 of the 1978 Bankruptcy Reform Act, 11 U.S.C. § 1101, *et seq.* (Supp. IV 1980), Pub.L. 95–598, 92 Stat. 2549, *et seq.* Various creditors of the debtor moved almost immediately to transfer venue to the United States Bankruptcy Court for the District of Maryland. They request this relief under 28 U.S.C. §§ 1477 and 1472 [1] on the ground that venue is

---

1. 28 U.S.C. § 1477 (Supp. IV 1980) provides:
"Cure or waiver of defects.
"(a) The bankruptcy court of a district in which is filed a case or proceeding laying venue in the wrong division or district may, in the interest of justice and for the convenience of the parties, retain such case or proceeding, or may transfer, under section 1475 of this title, such case or proceeding to any other district or division."
28 U.S.C. § 1472 (Supp. IV 1980) provides:
"Venue of cases under title 11.

improper, and, alternatively, under 28 U.S.C. §§ 1477 and 1475 [2] "in the interests of justice and for the convenience of parties."

The three creditors who first moved for such relief have been formally joined by a fourth, and five other creditors have sent letters supporting the request for a change of venue.[3] Included among this number are three of the six firms forming the creditors' committee appointed by the Court.[4] Only one creditor of those who have made their views known to this Court has indicated neutrality respecting where this proceeding is prosecuted.

The debtor, Dock of the Bay, Inc., opposes the requested transfer, claiming that its principal place of business is in this District, and that retention of the venue of its choice, i.e., the Eastern District of New York, would better serve the interest of justice and the convenience of parties.

A hearing was held on notice to the debtor's fourteen largest creditors on November 16, 1982.

The debtor is a Maryland corporation operating a chain of fast-food restaurants entirely in Maryland. Ten locations are leased; the eleventh it owns; eight of the eleven are operating. All of its full-time employees are in Maryland (Tr. 49–52) [5]; its bank accounts, until the filing of the petition herein, were in Maryland (Tr. 65); its books and records were kept and maintained there by the debtor's controller, Robert McCarthy II (Tr. 10–14); and its day-to-day operations are supervised in Maryland by the debtor's vice-president, Steven J. Noll, a Maryland resident. Mr. Noll purchased all of the supplies which the debtor needed during the six-month period preceding the filing of the petition (Tr. 8), and hired the one employee taken in during the same period (Tr. 56–57).

Nine of the debtor's 14 largest unsecured creditors are located in Maryland, as are 88 of the 113 creditors identified in the petition. The debtor's petition shows no money owed the New York taxing authorities, but shows $27,322.62 owed to the Maryland withholding tax authorities, and $175,000 to the Philadelphia office of the Internal Revenue Service. Except for the debtor's accountants and two small creditors owed less than $500, all of the debtor's creditors, except its sole stockholder, John Amentas, reside outside New York.

As recently as March 11, 1982, a corporate resolution identified Baltimore County in Maryland as the debtor's principal place of business, and less than six months before the debtor filed for relief under Chapter 11 it advised its creditors and lessors that its correct mailing address was 7402 York Road, Suite 101, Baltimore, Maryland.

The contention that, nevertheless, the Eastern District of New York has been the

---

"Except as provided in section 1474 of this title, a case under title 11 may be commenced in the bankruptcy court for a district—
"(1) in which the domicile, residence, principal place of business, in the United States, or principal assets, in the United States, of the person or entity that is the subject of such case have been located for the 180 days immediately preceding such commencement, or for a longer portion of such 180-day period than the domicile, residence, principal place of business, in the United States, or principal assets, in the United States, of such person were located in any other district."

**2.** 28 U.S.C. § 1475 (Supp. IV 1980) provides:
"Change of venue.
"A bankruptcy court may transfer a case under title 11 or a proceeding arising under or related to such a case to a bankruptcy court for another district, in the interest of justice and for the convenience of the parties."

**3.** The moving creditors are Burger Chef Systems, Inc., Elkton Associates, and Edgewater Partnership. Their motion has been formally joined in by Erie Insurance Exchange. Letters supporting the application have been received from Heritage Savings Association; Kraft, Incorporated; United Broadcasting Company, Inc.; Sparmark Joint Venture; WPOC/FM93 Nationwide Communications, Inc.

**4.** The Court appointed a committee of seven creditors. However, one has declined to serve.

**5.** All references preceded by "Tr." are to examination pursuant to Bankruptcy Rule 205 of John Amentas, the debtor's president and sole shareholder, made part of the record on this motion.

debtor's principal place of business for the largest fraction of the 180-day period preceding the filing of the petition for relief rests on the fact that John Amentas, the president of the debtor, its sole stockholder, and allegedly its largest unsecured creditor, conducts his business at 37–25 55th Street, Woodside, New York 11377. Mr. Amentas, who has been financing the debtor, both pre- and post-petition, maintains that he directs and supervises the debtor from this location. He asserts that it is the "nerve center" of the business otherwise conducted almost exclusively in Maryland.

The Woodside premises belong to another corporation in which Mr. Amentas is interested, the E.M.D. Construction Corp. ("E.M.D.") (Tr. 37–38). The debtor occupies the space under an oral lease with E.M.D. on a rent-free basis, but the debtor is not listed in the telephone directory at this address or at any other within this District.

At no time during the six-months preceding the filing of the petition did Mr. Amentas sign a single check on the debtor's Maryland accounts (Tr. 68). All checks were signed by Steven Noll. Nor did Mr. Amentas engage in any significant correspondence relating or referring to the debtor (Tr. 17–18). Not a single letter was produced addressed to Dock of the Bay at Woodside, New York. Furthermore, Mr. Amentas displayed little knowledge of the affairs of the debtor: he did not know the debtor had any directors or other officers (Tr. 44–45); could not identify the nature or extent of the debtor's assets or its unsecured creditors (Tr. 57–62); did not know the debtor's fiscal year (Tr. 69); and did not know where it filed its Federal income tax returns or in which state it paid local taxes (Tr. 69–70).

Except for Mr. Amentas, the debtor's only contacts with New York lie in the fact that its accountants are located in New York, that its income tax returns may be filed in New York, and that when the debtor decided to file for relief under the bankruptcy laws, it retained New York counsel.

## DISCUSSION

### I.

Under 28 U.S.C. § 1472, venue of a Chapter 11 proceeding is proper in any District where, for the greater fraction of the 180 days preceding the filing of the petition, the person filing for relief has had its domicile, residence, principal place of business, or principal assets. The debtor defends its choice of venue on the ground that it had its principal place of business in this District for the greater part of the relevant 180 days.

What constitutes the "principal place of business" of a corporation is a question of objective fact, not subjective intention. In re Hudson River Nav. Corp., 59 F.2d 971 (2d Cir.1932); In re The Valley Fair Corp., 4 B.R. 564, 16 C.B.C. 586 (S.D.N.Y.1978). That the management of a corporation by formal resolution claims a particular locale as its principal place of business is not decisive. In re Hudson River Nav. Corp., supra, 59 F.2d at 973–74. Nor is a corporation's principal place of business "necessarily where the manager, or controlling stockholders or directors, happen to be located or meet." 1 Collier on Bankruptcy ¶ 3.02, at p. 3–134 (15th ed. 1982). Since the question is one of fact, it is necessary in each case to consider the character of the corporation, its purposes, and activities. Furthermore, other cases are of only marginal helpfulness.

Because corporations frequently do business in several jurisdictions, determining which constitutes the principal locus of such a corporation's activities has, at times, turned on where the direction and control of the enterprise rested, the so-called "nerve center" test. In re Hudson River Nav. Corp., supra, 59 F.2d at 974; In re The Valley Fair Corp., supra, 4 B.R. 564, 16 C.B.C. at 588. What Dock of the Bay is seeking to do is elevate a useful metaphor, "nerve center," into a substantive principle of law. Its position is that New York is the "financial heart" of the debtor's operations because it is the place from which Mr. Amentas directs and controls the company and provides financing.

It is doubtful whether any of these activities singly or together constitute the "doing of business." Certainly, however, these straws cannot make New York, rather than Maryland, the place where the *principal* part of the debtor's business was carried on.

█ What business Dock of the Bay did in the sense of generating income it did in Maryland: it was there that its restaurants were located; it was there that its employees worked; it was there that its books were kept; it was there that it incurred the debts that, apart from what it owed Mr. Amentas, have brought it into the bankruptcy court. The debtor earned no money in New York; it had no business address in New York; it had no telephone in New York; it received no mail in New York; it maintained no bank account in New York; anyone trying to find the debtor in New York would have had no success, except if by chance, it had visited the E.M.D. Construction Corp. and had seen the debtor's name on the door.

Although no case is precisely like any other, the facts here are striking similar to those present in *In re Maidman,* 2 B.R. 569 (Bkrtcy.S.D.N.Y.1980), *aff'd in an unreported decision of the District Court* (Motley, D.J.), *aff'd sub nom. Compass Investment Group v. Maidman,* 668 F.2d 682 (2d Cir. 1982), where the court held that Miami Beach, where the principal assets of the debtor were located, and not New York City, was where venue properly lay. A similar result on similar facts was reached in *In re The Valley Fair Corp., supra,* where the court found the totality of the debtor's New Jersey contacts, and lack of comparable New York contacts, compelled the conclusion that New Jersey was the principal place of the debtor, whose office, warehouse facilities, and bulk of whose retail stores were located in New Jersey.

The conclusion that New York is not the debtor's principal place of business is based on the assumption that Mr. Amentas, just as he claims, gave control, direction, and financing to the debtor. Accordingly, this Court has not found it necessary to consider the strength of that claim in view of Mr. Amentas' almost total ignorance concerning the actual operations of the debtor.

## II.

Even if venue were proper in the Eastern District of New York, the interest of justice and the convenience of parties require that the venue of this Chapter 11 case be transferred to the Maryland District Court. In *In re Landmark Capital Co.,* 19 B.R. 342, 344 (Bkrtcy.S.D.N.Y.1982), *aff'd sub nom. Landmark Capital Co. v. North Central Development Co.,* 20 B.R. 220, 6 C.B.C.2d (MB) 455 (S.D.N.Y.1982), Bankruptcy Judge Babitt summarized the relevant provisions of the law as follows:

> "The interfacing of these provisions is to the effect that a case *properly* or *improperly* filed in a district may be transferred whenever the 'interest of justice and convenience of the parties requires.' The burden is on the moving party to demonstrate by a fair preponderance of the evidence that a transfer is warranted as the transfer of a case from one district to another is a cumbersome disruption of the Chapter 11 process. *In re Valley Fair Corporation,* 16 C.B.C. 586 (Bkrtcy.S.D.N.Y.1978). The resolution of this matter is left to the sound discretion of the court, based on its understanding of the requirements of the particular case and an understanding of the process that is Chapter 11 for 'discretionary choices are left to a court's judgment, a judgment to be guided by sound legal principles.' *In re Valley Fair Corp., supra* at 589." (Emphasis supplied; footnote omitted.)

█ The criteria to be employed in determining "convenience of the parties" are:

"(1) proximity of creditors of every kind to the court;

"(2) proximity of the bankrupt to the court;

"(3) proximity to the court of the witnesses necessary to the administration of the estate;

"(4) location of the assets; and

"(5) the economic administration of the estate."

*In re Commonwealth Oil Refining Co., Inc.,* 596 F.2d 1239, 1247 (5th Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 732, 62 L.Ed.2d 731 (1980); *In re Triton Chemical Corp.,* 46 F.Supp. 326, 329 (D.Del.1942). *Accord: In re Landmark Capital Co.,' supra,* 19 B.R. at 347–48; *In re Hadar Leasing Intern. Co. Inc.,* 14 B.R. 819 (S.D.N.Y.1981); *In re Maidman, supra,* 2 B.R. at 582; *In re Distributors Warehouse, Inc.,* 1 B.R. 539, 542 (Bkrtcy.M.D.Fla.1979); *In re Macon Uplands Venture,* 2 B.R. 444 (Bkrtcy.D.Md. 1980); *In re BSJ Tower Assoc.,* 11 B.R. 449 (Bkrtcy.S.D.N.Y.1981).

By every one of these tests, this case belongs in Maryland, not in the Eastern District of New York.

Of the debtor's 14 largest unsecured creditors, nine are located in Maryland. Of all its 113 creditors, 88 are located in Maryland. The creditors, themselves, have voiced their strong preference for Maryland: out of the six creditors who have agreed to serve on the creditors' committee, three have indicated their preference for Maryland.

Except for the location of Mr. Amentas in New York, every aspect of the debtor's business—its assets, its employees, its supervisory personnel—are in Maryland.

The witnesses who can be anticipated will be needed in this case involving property in Maryland are local appraisers. For them, the Maryland court is the most convenient. *Cf. In re Landmark Capital Co., supra,* 19 B.R. at 348. The witness best able to keep the creditors advised of how the business is doing is Mr. Noll, and he is in Maryland.

As for the location of the assets, while there are virtually no assets belonging to the debtor in New York, the bulk of its property is to be found in Maryland. Finally, the economic administration of the estate · would best be served by having a Maryland court most familiar with Maryland law evaluating and passing on the questions which will arise under 11 U.S.C.

§ 365 respecting the leases which constitute the main assets of the estate.

Just as there is no question that Maryland constitutes the most convenient forum for administering this debtor's assets and for the administration of this case, so is it equally clear that retaining it in New York will make it difficult, if not impossible, for the debtor's smaller creditors to actively participate. They will be put to the burden of traveling to New York and to the possible expense of having to retain New York counsel. Retaining the matter in New York will make it extremely difficult for creditors to police what is occurring and to protect their rights. .

The only persons whose convenience would be served by retaining the matter in New York are Mr. Amentas himself, his accountants, and his attorney. Just as Mr. Amentas, when the business was solvent, apparently periodically made trips to Maryland to supervise what was occurring, he will have to continue to do so during the pendency of these reorganizations proceedings. While it is true, as the debtor points out, that the plaintiff's choice of venue should not be lightly disturbed (*In re Cole Associates, Inc.,* 7 B.R. 154, 157 (Bkrtcy.D. Utah 1980)), there is ample reason to do so here.

Even if venue were properly laid in New York, this Court would order it removed to the District of Maryland in the interest of justice and the convenience of the parties.

An Order consistent with this Opinion was entered on November 19, 1982.