### In re COALFIELD DEVELOPMENT, INC., Debtor.

**Bankruptcy No. 7–85–01093–A.**

United States Bankruptcy Court,
W.D.Virginia,
Abingdon Division.

Jan. 10, 1986.

Copeland, Molinary & Bieger, Abingdon, Va., for debtor.

Penn, Stuart, Eskridge & Jones, Bristol, Va., for Pikeville Nat. Bank & Trust Co.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

The issue before the Court is whether the motion to transfer or dismiss this case for improper venue should be granted.

On or about December 15, 1981, Pikeville National Bank and Trust Company ("PNB") of Pikeville, Kentucky made a loan to the Debtor, Coalfield Development, Inc. ("Coalfield"), and Jimmy Dale Ratliffe, then president of Coalfield, in the amount of $700,000.00. This indebtedness was secured by, *inter alia*, a security interest on all machinery, equipment, furniture, fixtures, and inventory, now and hereafter acquired, as well as all accounts receivable, notes, drafts, and acceptances. The loan was also secured by a Certificate of Deposit in the sum of $100,000.00. A financial statement and security agreement dated December 15, 1981 and subsequently amended was filed with the office of the Clerk of Pike County, Kentucky to properly perfect the security interest.

The Debtor corporation is currently owned by three individuals, each holding a ⅓ interest—Buford Hackney, President, and Jack Lark, Secretary-Treasurer, both residents of Grundy, Virginia, and Bobby H. Justus, Vice-President, a resident of Delbarton, West Virginia. On September 9, 1985, these individuals, as well as Lois A. Lark and Phyllis A. Hackney, entered into an agreement with the Small Business Administration and PNB to assume the note of Coalfield held by PNB on which there was an outstanding indebtedness of $654,-796.31 and accrued interest of $23,890.57. The agreement also provided, *inter alia*, for these parties to pledge a $100,000.00 PNB Certificate of Deposit as additional collateral.

The Debtor corporation filed its Chapter 11 petition in the Abingdon Division of this Court on September 26, 1985. PNB filed a motion to dismiss the case for improper venue or to transfer the case to the United States Bankruptcy Court for the Eastern District of Kentucky, at Pikeville, where it may be heard in that Division of the District.

Upon hearing before this Court, the parties stipulated that all of the equipment of this corporation is located at the mine site in Pike County, Kentucky. A certificate issued by the Virginia State Corporation Commission notes that Coalfield Development is not the name of any corporation existing under the laws of this state or holding a certificate of authority to transact business in Virginia. The corporation has not filed a tax return in this state, but has filed a state income tax return in Kentucky. The corporation receives its mail at a Post Office near the mining operation in Kentucky, and has its telephone listed in Kentucky. All documents relevant to this litigation were executed in Kentucky.

In addition to the above facts, examination of the Debtor's schedules filed with its petition list a total of twenty-eight (28)

unsecured creditors. Of that number, twenty-two (22) are located in Kentucky, four (4) in West Virginia, as well as one (1) in Pennsylvania and one (1) in Missouri. None of the Debtor's creditors are located in Virginia. Six (6) of the seven (7) members of the Creditors' Committee are located in Kentucky.

The only connections of the Debtor with Virginia are the fact that two of its officers live in Grundy, Virginia, which is located a short distance from the Kentucky line. They travel to work in Kentucky daily; the corporation's books have been kept at the home of the Secretary-Treasurer in this state since September 9, 1985; and that some assets of the corporation are deposited in a bank in Grundy, Virginia simply as a matter of convenience. It is closer to Pikeville, Kentucky from Grundy than to Abingdon, Virginia.

28 U.S.C. § 1408 outlines the proper venue for cases filed under Title 11:

"Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership."

Section 1408 provides four alternative tests for determining venue sufficiently—

domicile, residence, principal place of business in the United States, or principal assets in the United States. These tests are a combination of the tests found in former *Bankruptcy Rule* 116(a). 1 *Collier on Bankruptcy,* ¶ 3.02 at 3–72 (15th ed.1985).

Under former *Rule* 116(a), proper venue with regard to corporations was determined by the district of principal place of business or principal assets. *Id.* What constitutes the "principal place of business" of a corporation for venue purposes in a Bankruptcy proceeding is a question of objective fact. *In re Dock of the Bay, Inc.,* 24 B.R. 811 (Bankr.E.D.NY 1982).

Based on the evidence presented, it would appear that proper venue for this case resides in the Eastern District of Kentucky. The Debtor corporation is incorporated under the laws of the Commonwealth of Kentucky where its mine is located, and all of the equipment of the corporation, which is the subject collateral of the loan by PNB, is located in that state. Although two of the three officers have their residence in this state, they travel daily to Kentucky for their employment. Under either the principal place of business or principal assets approach used with regard to businesses, venue appears appropriate in the Eastern District of Kentucky.

28 U.S.C. § 1412 provides for change of venue in Bankruptcy cases and states:

"A District Court may transfer a case or proceeding under Title 11 to a District Court for another District, in the interest of justice or for the convenience of the parties."

28 U.S.C. § 157 provides for orders of reference to the Bankruptcy Court, which has been entered in this District.

Section 1412 is similar to former 28 U.S.C. § 1475[1], which was added by the *Bankruptcy Reform Act of 1978*. Section 1475 was implemented by *Bankruptcy*

---

**1.** Former 28 U.S.C. § 1475 provided that "a Bankruptcy Court may transfer a case under Title 11 or a proceeding arising under or related

to such a case to a Bankruptcy Court for another District, in the interest of justice and for the convenience of the parties."

*Rule* 1014 [2], which provides the procedural mechanism for obtaining transfer. While former § 1475 provides for a change of venue in the interest of justice *and* the convenience of the parties, § 1412 speaks of the interest of justice *or* the convenience of the parties. With this minor difference, the standard for transferring a case under § 1412 remains generally the same as under earlier provisions, and prior case law is still important. 1 *Collier on Bankruptcy,* ¶ 3.02[4][c][i] at 3–101 (15th ed. 1985).

In *In re Commonwealth Oil Refining Co.,* 596 F.2d 1239, 1247 (5th Cir.1979), the Fifth Circuit outlined a list of factors to be applied in evaluating "convenience" for venue determination purposes. These include (1) proximity of creditors of every kind to the Court; (2) proximity of the debtor to the Court; (3) proximity to the Court of witnesses necessary to the administration of the estate; (4) location of the assets; and (5) economic and efficient administration of the estate. *Accord In re Landmark Capital Co.,* 20 B.R. 220, 6 C.B.C.2d 455, 460 (Bankr.S.D.NY 1982).

Applying these factors to the facts presented, it is apparent that transfer of this case would be more convenient for all persons interested. Not one of the creditors of this Debtor is located in Virginia. The overwhelming majority are located in Kentucky, and it would be easier for them to appear in proceedings in that state. Furthermore, testimony revealed that the corporate officers of the Debtor who reside in Virginia and would be potential witnesses in fact live closer to the mine site in Kentucky, Pikeville Division of the Eastern District, than they do to the Federal Courthouse in Abingdon where proceedings in this case would be heard. Moreover, the majority of the assets of the Debtor are located in Pike County, Kentucky where the mine is located. All of this evidence leans toward a conclusion that an economic and efficient administration of the Debtor's estate would be maintained by hearing of this case in the United States Bankruptcy Court for the Eastern District of Kentucky.

Accordingly, pursuant to *Rule* 1014 and 28 U.S.C. § 1412, this case, all adversary proceedings, Motions, and contested matters are hereby

### ORDERED

transferred to the United States Bankruptcy Court for the Eastern District of Kentucky for all such appropriate action.

---

**2.** *Rule* 1014 of the *Federal Rules of Bankruptcy Procedure* states in part:

"(a) Transfer of Cases.

(1) *Cases Filed in Proper District.* If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners and to other persons as directed by the court, the case may be transferred to any other district of the court determines that the transfer is for the convenience of the parties and witnesses in the interest of justice.

(2) *Cases Filed in Improper District.* If a petition is filed in an improper district, on timely motion of a party in interest and after hearing on notice to the petitioners and to other persons as directed by the court, the case may be retained or transferred to any other district if the court determines that the retention or transfer is for the convenience of the parties and witnesses in the interest of justice. Notwithstanding the foregoing, if no objection is raised, the court may, without a hearing, retain a case filed in an improper district."