Lester **WEBSTER** et al., Plaintiffs,

v.

Fred S. **WILKE** et al., Defendants.

Civ. A. No. P–2305.

United States District Court
S. D. Illinois, N. D.

Aug. 25, 1960.

Kevin D. Kelly and Anthony C. Raccuglia, La Salle, Ill., Robert E. Hunt, Peoria, Ill., for plaintiffs.

Miller, Westervelt & Johnson, Peoria, Ill., and Essington, McKibbin, Beebe & Pratt, Chicago, Ill., for defendants Fred S. Wilke, H. Ralph Hays and Midland Electric Coal Corp. William J. Voelker, Jr., Heyl, Royster & Voelker, Peoria, Ill., Edmund Burke, Springfield, Ill., Willard P. Owens, Washington, D. C., for defendants Hugh White, Thomas Kennedy, John Owens, and International Union, United Mine Workers of America.

MERCER, Chief Judge.

This cause, commenced by plaintiffs' complaint against the Midland Electric Coal Corporation for damages for breach of contract and against United Mine Workers of America for damages for interference with Midland's performance of the same contract, is now before the court upon the defendants' several motions to quash return of service of summons or to dismiss the cause for want of jurisdiction. Jurisdiction is predicated upon allegations of diversity of citizenship. Each defendant appears specially for the purpose of presenting his respective motion.

Plaintiffs concede that the attempted service of summons in Washington, D. C., upon the defendants, Thomas Kennedy and John Owen, as officers of United Mine Workers is a nullity. Fed.R. Civ.Procedure 4(f), 28 U.S.C.A. The return of service on such defendants will therefore be quashed.

■ . All of the plaintiffs are citizens of the State of Illinois. Plaintiffs concede that Ralph Hays, Fred S. Wilke and Hugh White, individually, cannot remain as defendants in the cause without destroying the diversity of citizenship requisite to the court's jurisdiction of the cause, and now request that the cause be dismissed as to those defendants. The same will be dismissed accordingly.

With all of the individual defendants thus removed from the cause, there remains only the questions whether or not the court has jurisdiction of the cause against Midland Electric Coal Corporation and United Mine Workers.

Midland, an Indiana corporation, has moved to dismiss the cause upon the ground that diversity of citizenship between Midland and plaintiffs does not exist. In support of its motion, that corporation presents the affidavit of T. C. Mullins, Jr., who states as follows: that Midland is engaged in the mining and production of bituminous coal; that all of its mining operations are carried on within the State of Illinois, where it produced approximately 2,400,000 tons of coal in 1959; that the executive office of the president of the corporation is located in the City of Chicago, Illinois; and that the corporation's mine offices are located in Atkinson, Farmington and Victoria, all in the State of Illinois. Upon those facts, Midland contends that its principal place of business is in the State of Illinois, and, therefore, that it must be deemed a citizen of Illinois for the purpose of the determination whether diversity of citizenship exists within the meaning of Section 1332(c) of the Judicial Code, 28 U.S.C.A. § 1332(c).

■ Subsection (c), added to Section 1332 by amendment in 1958, provides, in pertinent part, that "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Congress did not define the phrase "principal place of business", but did suggest that the courts, in construing that phrase in Section 1332(c), were to be guided by decisional law con-

struing the identical phrase in other federal statutes. Specific reference was made to Section 11 of the Bankruptcy Act, 11 U.S.C.A. § 11. U.S.Code Cong. & Adm.News 1958, p. 3102, quoted in Scot Typewriter Co. v. Underwood Corp., D.C.S.D.N.Y., 170 F.Supp. 862, 863, note 1.

The Section 11 analogy was applied in Moesser v. Crucible Steel Co., D.C.W.D. Pa., 173 F.Supp. 953, one of the few reported cases construing Section 1332(c). The court said that the question of where a corporation maintains its principal place of business is always a question of fact which depends for its solution upon all of the circumstances of the particular case. Decision of that question requires a general survey of the corporation's activities and a comparison of the character, importance and scope of the activities conducted in each state where the corporation operates.

The Moesser case was a personal injury suit prosecuted in the United States District Court for the Western District of Pennsylvania by a Pennsylvania citizen. The defendant, Crucible, was a New Jersey corporation. Upon its findings that most of Crucible's manufacturing activities were carried on in Pennsylvania, that a majority of its employees were there employed and that its production supervisory offices were there located, the court held that the principal place of business of the corporation was in Pennsylvania and that diversity of citizenship of the parties did not exist.

Upon the issue of the location of the principal place of business of a corporation for the purpose of determining whether diversity of citizenship was shown, the court said, in Scot Typewriter Co. v. Underwood Corp., D.C.S.D.N.Y., 170 F.Supp. 862, 865, that that issue is governed "by the totality of corporate activity at a given place, which, * * *, may be said to represent the 'center of gravity' of corporate function."

In Colorado Interstate Gas Co. v. F.P. C., 10 Cir., 142 F.2d 943, 950–951, the court, construing the phrase "principal place of business" in Section 19(b) of the Natural Gas Act, 15 U.S.C.A. § 717r (b), said that the principal place of business of a corporation "is where the actual business of the corporation is conducted or transacted. It is a question of fact to be determined in each particular case by taking into consideration such factors as the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations."

As applied to the mining industry, the phrase "principal place of business" was construed in Continental Coal Corp. v. Roszelle Bros., 6 Cir., 242 F. 243, 244, involving an involuntary petition under Section 11 of the Bankruptcy Act. Continental, the alleged bankrupt, was a Wyoming corporation. It maintained its principal executive offices in Chattanooga, Tenn., and all of its sales were there consummated. All of its mining operations, shipping and other production activities were done in the Eastern District of Kentucky. The offices of its production superintendants and mine managers were located in Kentucky. Under those circumstances, the court held that Continental's principal place of business was in Kentucky, not Tennessee, and that the proceeding had been properly filed in the District Court for the Eastern District of Kentucky.

In the case at bar, Midland's business is the mining, processing and sale of coal. The activities which exemplify that corporation's reason for being are all conducted in the State of Illinois. All of its mines are there located, all processing and shipping is there done, its production employees are there employed, its executive offices are there located and its production-supervisory offices are there situated. By reason of those facts, the conclusion is inescapable that the principal place of business of the corporation, within the meaning of Section 1332(c), is in Illinois. Diversity of citizenship between Midland and plaintiffs, therefore, does not exist.

Scot Typewriter Co. v. Underwood Corp., D.C., 170 F.Supp. 862, upon which plaintiffs principally rely, is distinguishable from the case at bar. The plaintiff,

Scot, was a New York corporation. The defendant, Underwood, was a Delaware corporation, engaged in the manufacture and sale of typewriters, business machines and related products. Its manufacturing and production plants were located in Connecticut, New Jersey and California. All of its executive offices and sales offices were located in New York, New York, and all corporation policy decisions were there made. Upon the evidence of Underwood's New York activities, the court held that New York was the principal place of business of that corporation and that diversity of citizenship, therefore, did not exist. The key to the Scot decision appears in the following language from the court's opinion: "Where a corporation is engaged in far-flung and varied activities which are carried on in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers control and coordinate all activities without regard to locale, in the furtherance of the corporate objective." 170 F.Supp. at page 865.

By contrast, all bread and butter activities of Midland are localized in Illinois, while only general administrative and accounting activities are carried on in Indiana. The distinction drawn is suggested by the Continental opinion. There the court, by dictum, suggested that a mining company which conducted mining operations in several different states would have as its principal place of business the nerve center from which the whole corporate activity was directed and controlled. Continental Coal Corp. v. Roszelle Bros., supra, 242 F. at page 246.

■ The question which remains is whether or not the court has jurisdiction over the cause as against the United Mine Workers. The reported opinion in Lowry v. International Brotherhood, etc., 5 Cir., 259 F.2d 568, ably summarizes the legal principles which apply to that question. The Mine Workers, an unincorporated association, must be recognized as a jural person for purposes of

suing and being sued under the decision in United Mine Workers of America v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, and the provisions of Rule 17(b), 28 U.S.C.A. Such an association, however, has no jural identity in the sense in which a corporation is recognized as an entity partaking of the concept of citizenship. Where a suit involves such an unincorporated association, for the purpose of determining whether diversity of citizenship exists, the citizenship of the association's individual members is controlling. Lowry v. International Brotherhood, etc., supra, and cases cited at page 571, note 5; Russell v. Central Labor Union, D.C. E.D.Ill., 1 F.2d 412.

■ Here it appears both from the complaint and from the affidavits supporting the Mine Workers' motion that that union has a number of members who are citizens of Illinois. For purposes of this case, if the Union is sued as an entity under Rule 17(b), it takes the citizenship of its Illinois members and diversity does not exist.

Plaintiffs take the position that they can maintain this action as a suit against the membership of the Mine Workers as a class and have diversity of citizenship by naming as representatives of the class members of the Union who are citizens of states other than Illinois. In order to have service of process upon the class, however, plaintiffs are on the horns of a dilemma. The only member of the Union named as a defendant in the complaint upon whom valid service of process may be obtained is Hugh White, a citizen of Illinois. If I have correctly followed their contention in this respect, plaintiffs would dismiss Hugh White entirely from their cause, but would have process served upon him as an agent for the president and secretary of the parent Union who would then, in turn, constitute the representatives of the union membership as a class.

That contention is predicated, in part, upon the Lowry opinion, but that decision, in the final analysis, does not support the contention. The Lowry case

held, only, that diversity of citizenship did not exist in a suit filed by citizens of Mississippi against an international union, as an entity, since the defendant union had a number of members who were citizens of Mississippi. The crux of the Lowry decision, and the refutation of these plaintiffs' position, is summarized in the language of the court, 259 F.2d at page 573, as follows: "While alternative methods of suit are provided by Rules 17(b) and 23(a), diversity of citizenship for federal jurisdiction must still exist between all the parties on one side and all the parties on the other. If the association is sued or sues as an entity under Rule 17(b), citizenship is determined by the individual members; if the association is a class party under Rule 23(a), the representatives named must have complete diversity from the other side." (Footnote citations of the court omitted.)

If plaintiffs are to prosecute this cause against the Mine Workers as a class party, it is encumbent upon them to name as defendants representative members of the Union who are not citizens of Illinois, but upon whom valid service of summons can be had. They have not done so. Assuming, arguendo, that the service upon Hugh White as an officer of a constituent unit of the International Union was sufficient service of process upon the parent Union, diversity of citizenship would not exist. No other representative party is named upon whom process may be served. If plaintiffs would overcome their dilemma, they must institute their suit in a proper jurisdiction.

Both Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 4 Cir., 148 F.2d 403, and Operative Plasterers & Cement Finishers International Ass'n, etc. v. Case, 68 App.D.C. 43, 93 F.2d 56, upon which plaintiffs rely, are inapposite, since neither case involved a question of diversity of citizenship. The Tunstall case was a suit under the Railway Labor Act, 45 U.S.C.A. § 151 et seq. and, as here pertinent, the court held only that

the association could be sued as a class party and that service of process upon representative members was sufficient to give the court jurisdiction of the association. The Operative Plasterers case was a suit to enforce a judgment entered by a state court and the question involved was one of state procedure, i. e., whether or not the state court had obtained jurisdiction over the association as a class party.

The return of service upon Thomas Kennedy and John Owen is quashed. For the reasons hereinabove stated, the suit is dismissed for want of federal jurisdiction. It is hereby so ordered.