Judge M. MULLINS et al., Plaintiffs,

v.

BEATRICE POCAHONTAS COMPANY, Defendant.

Civ. A. No. 68–C–19–A.

United States District Court, W. D. Virginia, Abingdon Division.

March 11, 1974.

Robert T. Winston, Jr., Norton, Va., and Carl W. Newman, Appalachia, Va., for plaintiffs.

R. Kenneth Wheeler, Hunton, Williams, Gay & Gibson, Richmond, Va., for defendant.

## OPINION

TURK, Chief Judge.

On Februray 6, 1973 this court entered judgment in favor of the defendant, Beatrice Pocahontas Company and against the plaintiffs, landowners who had sought damages and injunctive relief from the defendant corporation alleging that its coal mine and processing plant in Buchanan County, Virginia constituted a nuisance. Plaintiffs appealed this judgment to the Court of Appeals which on January 4, 1974 remanded the case to this court to consider whether it had had jurisdiction to try the case. Pursuant to this remand, a hearing was held on February 6, 1974 for the purpose of determining whether there was diversity of citizenship between the plaintiffs and the defendant within the meaning of Title 28 U.S.C. § 1332 [1] on February 14,

1968, the date on which the complaint in this case was filed.

The narrow issue to be determined on remand was that of ascertaining the "principal place of business" of the defendant. At the hearing held on February 6, 1974, the court heard testimony from Arthur Regan, Jr., Treasurer of the Island Creek Coal Company in February, 1968 and at present, and Robert P. Reineke, Assistant General Counsel for the Island Creek Coal Company. Both witnesses testified concerning the operations and organization of the Beatrice Pocahontas Company on February 14, 1968, and on the basis of this testimony the court makes the following factual determinations relative to the principal place of business of the defendant as of that date:

1. Beatrice Pocahontas Company was a joint venture company with 50% of its stock owned by the Island Creek Coal Company and the other 50% owned by Republic Steel Corporation.[2]

2. The Beatrice Pocahontas Company was principally directed and managed by the Island Creek Coal Company, but Republic Steel had members on the board of directors. The Chairman of the Board was J. L. Hamilton, who was employed by Island Creek Coal Company and the President was T. F. Patton of Republic Steel.

3. Island Creek Coal Company was a wholly-owned subsidiary of Occidental Petroleum a corporation with interests in coal, oil and

1. The pertinent provisions of this statute are:
   (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—
   (1) Citizens of different states;

   .  .  .  .  .

   (c) For purposes of this section . . . a corporation shall be deemed a citizen of any State by which it has been incorporat-

ed and of the State where it has its principal place of business. . . .

2. In its opinion remanding this case, the Court of Appeals stated that the record showed that Island Creek Coal Company and Republic Steel also jointly owned the Virginia Pocahontas Company. According to the testimony at the hearing, the Virginia Pocahontas Company is a joint venture between Island Creek Coal Company and Jones and Laughlin Steel Company.

chemicals, with its corporate headquarters and principal offices in Los Angeles, California.

4. Island Creek Coal Company operates mines in four states, and although it principally produces and sells coal it also operates some retail stores which primarily serve the miners.

5. The home offices of both Island Creek Coal Company and Republic Steel were in Cleveland, Ohio.

6. The corporate headquarters for the Beatrice Pocahontas Company was in Cleveland, Ohio;[3] the board of directors meetings for Beatrice were held in Cleveland at the offices of Republic Steel; and the legal department, executives, and board of directors for Beatrice were generally the same as those of Island Creek Coal Company.

7. The Beatrice Pocahontas Company only produced coal from mining operations in Buchanan County, Virginia, and its only customers were Island Creek Coal Company and Republic Steel. Beatrice employed approximately 400 persons in its coal mining operations, and all of its management and other services were performed by persons employed by Island Creek Coal Company or Republic Steel. Island Creek Coal Company had a management contract with Beatrice.

8. The Beatrice Pocahontas Company had a division president whose office was in Holden, West Virginia,[4] and he was directly responsible for the mining operations in Buchanan County, Virginia. The principal engineering department and the comptroller for Beatrice were also in Holden, West Virginia and the day-to-day accounting and operations of the mining were conducted there.

9. All of the sales accounting and coal distribution for the Beatrice Pocahontas Company were conducted from the distribution center in Huntington, West Virginia. The payroll checks for the Beatrice employees also came from Huntington, West Virginia. The general ledger for Beatrice was kept in Cleveland, Ohio.

10. There was a superintendent for the mine in Virginia who reported to the division president in Holden, West Virginia.

11. The principal bank account for the Beatrice Pocahontas Company was in Cleveland, Ohio and there were smaller operating accounts in Holden and Huntington, West Virginia. There was also a bank account in Virginia which Mr. Regan believed was required by the Virginia Workmen's Compensation Law. Payroll checks for Beatrice employees were paid through the First National Bank of Bluefield, West Virginia.

12. Island Creek Coal Company leased some 38,000 acres of land in Buchanan County, Virginia and in turn subleased it to Beatrice Pocahontas Company for the coal mining operations.

13. Beatrice Pocahontas Company paid taxes in Virginia on its income and assets. A substantial portion of the coal produced by Beatrice is transported by rail to Norfolk, Virginia for shipment overseas.

14. Labor contracts for Beatrice were negotiated in Washington, D.C. by the Bituminous Coal Operators Association.

3. The corporate headquarters has since been moved to Lexington, Kentucky.

4. According to the testimony of Mr. Regan a Virginia division of Beatrice Pocahontas Company was formed in March, 1968.

As noted by the Court of Appeals in its decision remanding this case, there are two basic tests utilized for determining the principal place of business of a corporation for purposes of diversity jurisdiction: The "home office or nerve center" approach; and the "place of operations" approach.

■■ Under the "home office" test the court looks to the location of the executive offices from which corporate activities are controlled and directed. On basis of the facts found by this court it is clear that in February, 1968 the day-to-day control of the Beatrice Pocahontas Company took place in Holden, West Virginia whereas the general policies of the company were set by the board of directors in Cleveland, Ohio. Thus whether the home office is deemed to be the place from which the daily affairs of the company were directed, Kelly v. United States Steel Corp., 284 F.2d 850 (3d Cir. 1960), or the place of ultimate decision making authority, Scot Typewriter Co. v. Underwood Corp., 170 F. Supp. 862 (S.D.N.Y.1959), under this first approach diversity jurisdiction would exist.

■■ The second approach to determining the principal place of business looks to the location at which the bulk of corporate activities took place. Under this approach diversity jurisdiction in the case at bar is not nearly so clear as with the "home office" test for it appears that the actual mining and processing of coal by the Beatrice Pocahontas Company took place solely in Buchanan County, Virginia. But consideration of cases in which courts have found a corporation's principal place of business to be in the state in which its physical operations are concentrated have generally involved more of a nexus with the state in question than is present in this case. In this respect, it is noteworthy that the Beatrice Pocahontas Company did not own land in Virginia; its only customers were outside Virginia; it conducted no sales promotion or advertising in Virginia or elsewhere; its labor contracts were not negotiated in Virginia; its principal bank accounts and payroll account were outside of Virginia; the day-to-day management and engineering functions took place in West Virginia; and its principal purpose was to serve its parent corporations which were outside Virginia. Yet one or more of the above activities by a corporation have generally been present in a state (in addition to the bulk of the physical activities of the corporation taking place there) in those cases in which that state has been found to be the corporation's principal place of business. E. g., Bruner v. Marjec, Inc., 250 F.Supp. 426 (W.D.Va.1966); Anniston Soil Pipe Co. v. Central Foundry Co., 216 F.Supp. 473 (N.D.Ala.1963), aff'd 329 F.2d 313 (5th Cir. 1964); Mattson v. Cuyuna Ore Co., 180 F.Supp. 743 (D.Minn.1960). The case at bar is somewhat unique and does not fit neatly within decided cases in that as of February 1968, although the defendant's physical activities took place in Virginia, virtually all operational control and other significant corporate actitity took place in other states.

Since the Beatrice Pocahontas Company is not a highly diversified company dealing in varied activities in different states, it is likely that the second approach which looks to the bulk of corporate activity should be applied to determine diversity jurisdiction. See Bruner v. Marjec, Inc., 250 F.Supp. 426 (W.D. Va.1966). But even under this approach a very substantial part, if not the bulk, of corporate activity was conducted outside Virginia in February, 1968, and the facts indicate that the defendant's contacts with Virginia were limited almost to the minimum amount consistent with the efficient mining of coal. It is thus the opinion of the court that under either approach defendant's principal place of business in February, 1968 was not Virginia and jurisdiction in this court was proper under 28 U.S.C. § 1332.

This court well realizes that the question of the defendant's principal place of business under the second approach is

**286**

not clearcut and that the opposite result from that reached here would be defensible. But although the jurisdiction of this court may be marginal, in light of the history of this litigation, the court feels that in the interest of justice, doubts should be resolved in favor of jurisdiction. This case was initiated over six years ago; it has twice been appealed and has twice been remanded; detailed findings have been made by a Special Master; and these findings have been carefully reviewed by and argued to the court. To dismiss this case now on the issue of jurisdiction, which is certainly an arguable point, would render the untold amounts of time and energy expended on this case nugatory.

Accordingly, for the reasons and authority stated, it is the opinion of this court that jurisdiction of this case was proper under 28 U.S.C. § 1332. Pursuant to the direction of the Court of Appeals this case will be returned to that court for final disposition of the appeal.

And it is so ordered.