Blair RIGGS, Plaintiff,

v.

**ISLAND CREEK COAL COMPANY,**
Defendant.

Civ. A. No. 70–227.

United States District Court,
S. D. Ohio, E. D.

Oct. 5, 1974.

See also, D.C., 371 F.Supp. 287.

Thomas Beetham, Robert B. Werren, Cadiz, Ohio, Philip Howes, Canton, Ohio, for plaintiff.

Robert Keeler, Barton Whitman, Cincinnati, Ohio, for defendant.

## ORDER

WEINMAN, District Judge.

This cause now comes before the Court pursuant to defendant's suggestion of lack of subject matter jurisdiction, which was filed on March 8, 1974 pursuant to Fed.R.Civ.P. 12(h)(3).

This case was originally removed to this Court from a state court of gen-

eral jurisdiction. Diversity of citizenship was the ultimate predicate of this Court's authority. Defendant now, after trial, states that the case was not properly removed.[1] It is pointed out that the removal petition itself states that defendant's "principal place of business" was in Cleveland, Ohio. This, supposedly, made both parties Ohio citizens which destroyed diversity and made removal improper, see, 28 U.S.C. § 1332(c) and § 1441(a). No motion to remand was ever made and the Court never ruled on the matter sua sponte, although it certainly would have been possible to do so. At the time the petition for removal was filed, the case theoretically could have been remanded to the state court based on the arguably inadequate jurisdictional allegations. That, however, would have been tantamount to disposing of the merits of the case on the face of the pleadings. This would have been a harsh blow to defendant at that time. Additionally, the Supreme Court of the United States has taken a disfavorable attitude toward hasty disposition of litigation on the face of pleadings alone, see, Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), as a judicial technique not favored under the liberal spirit of the Federal Rules of Civil Procedure. This case was thus not dismissed on the threshold, but in the words of the Fifth Circuit Court of Appeals, the question of jurisdiction in this case could be:

" . . . reserved and taken with the case, to allow complete development of the evidence bearing on this question, through discovery and at trial. Collins v. New York Central System, 117 U.S.App.D.C. 182, 327 F. 2d 880 (1963)." Harrison v. Prather, 404 F.2d 267, 273 (5th Cir. 1968).

This would seem a proper way to handle the jurisdictional question in this case, because of the uniform rule that the determination of a corporation's "principal place of business" is a question of fact in diversity cases, Leve v. General Motors Corp., 246 F.Supp. 761 (S.D.N.Y. 1965); Colorado Interstate Gas Co. v. FPC, 142 F.2d 943 (10th Cir. 1944); Gilardi v. Atchison, Topeka, & Sante Fe RR. Co., 189 F.Supp. 82 (N.D.Ill.1960); Brown v. Kingsport Publishing Corp., 321 F.Supp. 1352 (E.D.Tenn.1971); Nassau Sports v. Peters, 352 F.Supp. 867 (E.D.N.Y.1972), which is best reviewed by a survey of the total activity of the Corporation, Bullock v. Wiebe Construction Co., 241 F.Supp. 961 (S.D. Iowa 1965). Concentration of business activity can reveal corporate citizenship for diversity purposes, i. e., its "principal place of business," see, Briggs v. American Flyers Airline Corp., 262 F. Supp. 16, 18 (N.D.Okl.1966). Geographical distribution of business volume is, for example, the kind of factor that is relevant in deciding this issue, Carter v. Clear Fir Sales Co., 284 F.Supp. 386 (D.Or.1967). Also, since this matter presents an issue of fact it is subject to the clearly erroneous standard of appellate judicial review.

The Court, of course, realizes that the question of subject matter jurisdiction can be raised at any time, and that validity of a judgment depends on the existence of jurisdiction at the start of the civil action. Otherwise, the brief of defendant is not especially helpful to disposition of this case.

The affidavit of defendant's president, submitted with its brief, is especially relevant to the case in a rather ironic way. The affidavit was no doubt submitted to show the absence of jurisdic-

---

[1]. Throughout this litigation, counsel for both parties have been in agreement concerning the jurisdictional facts. When this matter first came on to be heard on the merits, the Court decided, and counsel for both parties agreed, that the issue of liability would be heard and decided by the Court before the question of damages was taken up. This Court's opinion on the liability issue is printed as Riggs v. Island Creek Coal Company, 371 F.Supp. 287 (S.D.O.1974). After this Court ruled adversely to defendant on the issue of liability, new counsel was secured by defendant and the present suggestion of lack of jurisdiction was filed.

tion in this case, but when read in light of the controlling principles of law it affirmatively establishes that jurisdiction and vindicates the Court's earlier decision to give defendant its day in Court in this forum.

■■ This case was removed to this Court in August, 1970. Defendant's corporate headquarters, at that time, was located in Cleveland, Ohio. Defendant's president's affidavit asserts this. (Counsel for defendant is correct in saying that it is now immaterial that headquarters has been located at Lexington, Kentucky since July, 1973). According to defendant, this destroys diversity under the dual test of 28 U.S.C. § 1332(c). This is not so. Regardless of whether a case is originally filed in or removed to Federal Court, a corporation's "principal place of business" under 28 U.S.C. § 1332(c) is a conclusion of fact based on analysis of many factors, and emphatically is not necessarily identified with the location of the corporation's principal executive offices in each case, Gavin v. Read Corp., 356 F.Supp. 483 (E.D. Pa.1973); Joint Authority v. Roberts and Schaefer Co., 180 F.Supp. 15 (W.D. Pa.1960); Wells v. Celanese Corp. of America, 239 F.Supp. 602 (E.D.Tenn. 1964); Carlton Properties, Inc. v. Crescent City Leasing Corp., 212 F.Supp. 370 (E.D.Pa.1962). Indeed, a very clear rule of law applies to mining corporations such as is present in this case. A mining corporation is, for diversity purposes, a citizen of the state where most of its work, land, buildings, inventory, employees, equipment and machinery are located, Hodges v. Georgia Kaolin Co., 207 F.Supp. 374 (M.D.Ga.1962); Webster v. Wilke, 186 F.Supp. 199 (S.D.Ill. 1960); Potocni v. Asco Mining Co., 186 F.Supp. 912 (W.D.Pa.1960); Spector v. Rex Sierra Gold Corp., 227 F.Supp. 550 (S.D.N.Y.1964); see also, Kreger v. Ryan Bros., 308 F.Supp. 727 (W.D.Pa. 1970). Defendant's own affidavit shows that in this case it does not even contend such location is in Ohio. The affidavit states:

"In 1970 we had one active mine known as the Vail Mine in the State of Ohio and two active mines in the State of Pennsylvania. The bulk of our mining operations was conducted in the States of Virginia, West Virginia, and Kentucky. In November, 1972 the Vail Mine was placed on an inactive status; and Island Creek has not since that time conducted active mining operations in the State of Ohio."

■ 28 U.S.C. § 1332(c) provides two alternative tests for citizenship for diversity purposes with regard to Corporations: first, the state of incorporation test and second, the principal place of business test. Defendant clearly admits that its state of incorporation is Delaware, so the first prong of the above test is clearly met in this case, plaintiff being an Ohio citizen. Whether the second prong of the above test is met has been often analyzed by subdividing that test even further into the "home office" test and the "place of operations" test, see, e. g., Mullins v. Beatrice Pocahontas Company, 374 F.Supp. 282 (W.D.Va. 1974). Perhaps that is why defendant makes so much of the fact that his principal executive offices were in Cleveland at the start of this litigation. But, two crucial legal observations make this fact (if it is indeed a fact) irrelevant. First, as outlined earlier, the legal definition of "principal place of business" for 28 U.S.C. § 1332(c) purposes need not always coincide with the location of a corporation's principal executive offices. Second, the case law is overwhelming, indeed virtually unanimous, in holding that in the case of Mining Corporations such as this defendant, the principal place of business is to be determined *not* by any "home office" test, but by the "place of operations" test, *i. e.*, wherever most of the work for which the corporation was created actually takes place, Mattson v. Cuyuna Ore Company, 180 F.Supp. 743 (D.Minn. 1960) and the *Hodges, Webster, Potocni, Spector*, and *Kreger* cases *supra*. The

Sixth Circuit Court of Appeals has clearly adopted this position also. The case arose thusly. A District Court in Kentucky held that a mining corporation's principal place of business for bankruptcy proceedings was not necessarily where its principal executive offices were located; the District Court further held that a coal mining corporation's principal place of business was in the district where its coal mining and shipping operations and nearly all of its coal lands were (the "place of operations" test), Roszell Bros. v. Continental Coal Corp., 235 F. 343 (E.D.Ky.1916). The Sixth Circuit Court of Appeals affirmed the decision of the District Court and on the jurisdictional point emphatically stated that, "[w]e agree with the conclusion [of the District Court] and with the reasoning on which it is based," Continental Coal Corp. v. Roszwell Bros., 242 F. 243 at 247 (6th Cir. 1917). Thus, at the inception of this case, as well as at present, whether the "home office" of defendant was in Cleveland was and is irrelevant, even if true. Based on the entire record now before the Court it is hereby found as a fact that defendant is not an Ohio citizen for diversity purposes.

All through this litigation, defendant has admitted that it is a Delaware Corporation; the above analysis and statement of its president shows it also not to be a citizen of Ohio under the "principal place of business" alternative test of 28 U.S.C. § 1332(c). Thus, diversity properly exists even by defendant's own factual admissions, and the Court has jurisdiction.

Defendant's affidavit also makes it arguable that its real principal place of business is in California, but since the other admissions, supra, show clearly that it is not in Ohio, the Court need not decide the latter question.

This Court's last major order in this case (the liability decision) was interlocutory and no "piecemeal" appeal could be taken therefrom, see Andrews v. United States, 373 U.S. 334, at 340, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1962). At any rate, the time for appealing that decision has expired, see, Fed.R.App. P. 4. The present order will also be interlocutory and non-appealable as it meets none of the exceptions to such appeals found at 28 U.S.C. § 1292(a) and is not a properly certifiable case under 28 U.S.C. § 1292(b). Therefore, this Court specifically retains jurisdiction of this case until the matter of the issue of damages is settled or proceeds to final judgment.

Since the jurisdictional issue in this case apparently confuses defendant's new counsel, the Court feels compelled to make the following observation with respect thereto. This Court has determined the facts upon which diversity jurisdiction depends in this case. This determination will withstand judicial review unless found to be clearly erroneous. Yet, even if this finding is reversed, the defendant's judicial admissions now of record show clearly that defendant's principal place of business now is in either Kentucky, Virginia, West Virginia, or even perhaps California: certainly not Ohio. Similarly, these admissions and the whole of the present record show that defendant's principal executive offices ("home office" if you will) are now in Lexington, Kentucky. But, plaintiff is still an Ohio citizen. Thus, even if this Court were found without jurisdiction and the present case dismissed, no reason appears why plaintiff could not now amend his complaint or even file a new action in this same Court to relitigate all of these same issues before the same judge because diversity certainly exists at the present time under any test and the Court can conceive of no statute of limitations which operation is not now suspended by this plaintiff's diligence in protecting his claim. Such a result would be clearly absurd.

Defendant first sought this forum. After the case went against it in early stages, defendant hired new counsel, raised the chimerical jurisdictional issue, and has given the Court reason to believe that it has engaged in deliberate acts of delay and obstruction not called

for under the circumstances of this case. Both parties, but the defendant in particular, must now move to complete this litigation as expeditiously as possible. All needless delay must cease. After issuance of the present order this Court will use its full power to prohibit and sanction deliberate or unfounded obstruction or delay of the process of discovery.

Wherefore, defendant's suggestion of a lack of jurisdiction (which is treated as a motion to dismiss) is hereby overruled.

Accordingly, the parties are now ordered to proceed with briefing and full discovery in anticipation of the trial as to damages which is hereby set for 10 o'clock A.M. in Dayton, Ohio on Tuesday, December 10, 1974.

It is so ordered.