Gladys CAPERTON et al., Plaintiffs,

v.

Beatrice POCAHONTAS et al.,
Defendants.

Cummingham MUTTER, Plaintiff,

v.

Beatrice POCAHONTAS et al.,
Defendants.

Harold POWERS, Plaintiff,

v.

Beatrice POCAHONTAS et al.,
Defendants.

Harry FERREL et al., Plaintiffs,

v.

Beatrice POCAHONTAS et al.,
Defendants.

Civ. A. Nos. 750777, 750388, 750322
and 750323.

United States District Court,
W. D. Virginia,
Abingdon Division.

Sept. 30, 1976.

**446**

S. Strother Smith, III, Smith, Robinson & Vinyard, Abingdon, Va., for Gladys Caperton, and others.

Haney H. Bell, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for defendants Republic Steel Corp. and Jones & Laughlin.

Wm. W. Eskridge, Penn, Stuart, Eskridge & Jones, Abingdon, Va., for Virginia Pocahontas Co. and Beatrice Pocahontas Co.

Charles B. Flannagan, II, Woodward, Miles & Flannagan, Bristol, Va., for defendants, Beatrice Pocahontas, Virginia Pocahontas and Island Creek Coal Co.

## OPINION and ORDER

TURK, Chief Justice.

By Order dated December 24, 1975 these four cases against the Beatrice Pocahontas Coal Company, the Virginia Pocahontas Coal Company and the Island Creek Coal Company were consolidated for the purpose of determining whether diversity jurisdiction existed in this court on November 20, 1975, the date on which Civil Action No. 750777 was filed.[1] The plaintiffs were all citizens of Virginia on that date and the specific question presented is whether the Virginia Pocahontas Coal Company (hereinafter "Virginia Pocahontas") and the Beatrice Pocahontas Coal Company (hereinafter "Beatrice") were then also citizens of Virginia within the meaning of 28 U.S.C. § 1332.[2] Both Virginia and Beatrice are incorporated in Delaware and therefore the resolution of the jurisdictional question requires a determination of the "principal place of business" of these corporations as of November 20, 1975. Evidence and argument by counsel was heard on April 14, 1976, and based on this presentation and the defendants' answers to interrogatories the court has reached the following conclusions.

Plaintiffs rely primarily on this court's earlier determination in the case of *Mullins v. Beatrice Pocahontas Company,* 374 F.Supp. 282 (W.D.Va.1974). In that case the Court of Appeals had remanded the case on its own motion for this court to determine whether the "principal place of business" of Beatrice was Virginia for the purpose of diversity jurisdiction. On remand this court made detailed findings of fact as to the corporate organization and activities of Beatrice and concluded that the principal place of business of Beatrice as of February, 1968 was not Virginia and jurisdiction in this court under 28 U.S.C. § 1332 therefore existed. In reaching this conclusion the court discussed the two tests which have judicially evolved for determining a corporation's principal place of business. Under the "home office or nerve center" test the court had no hesitancy in concluding that Beatrice's principal place of business was not in Virginia in February, 1968. However, under the "place of operations" test the court noted that "diversity jurisdiction in the case at bar is not nearly so clear as with the 'home office' test for it appears that actual mining and processing of coal by the Beatrice Pocahontas Company took place solely in Buchanan County, Virginia". 372 F.Supp. at 285. The court nevertheless held that under this "place of operations"

---

1. The other three cases were filed in June and July, 1975, however the jurisdictional facts were the same in November, 1975.

2. The pertinent provisions of this statute are:
   (a) The district court shall have original jurisdiction of all actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

   (1) citizens of different States:

   .    .    .    .    .

   (c) For purposes of this section  .    .    .  a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business  .    .    ..

test Beatrice's principal place of business was not Virginia, but in so holding stated:

The court well realizes that the question of the defendants' principal place of business under the second approach is not clearcut and that the opposite result from that reached here would be defensible. But although the jurisdiction of this court may be marginal, in light of the history of this litigation, the court feels that in the interest of justice, doubts should be resolved in favor of jurisdiction. This case was initiated over six years ago; it has twice been appealed and has twice been remanded; detailed findings have been made by a Special Master; and these findings have been carefully reviewed by and argued to the court. To dismiss this case now on the issue of jurisdiction, which is certainly an arguable point, would render the untold amounts of time and energy expended on this case nugatory. 374 F.Supp. at 285–286.

The case was thereafter returned to the Court of Appeals which summarily affirmed the case on its merits in an unpublished opinion which made no reference to the jurisdictional question, *Mullins v. Beatrice Pocahontas Co.,* 530 F.2d 969 (2 Cir. 1975).

Because the corporate organization and activities of Beatrice have not been altered to a great degree since February, 1968, the decision in *Mullins* is substantial precedent in support of plaintiffs' position that diversity jurisdiction exists as to Beatrice. In addition, the similarities in the corporate structure of Virginia Pocahontas and Beatrice makes the *Mullins* decision equally strong authority for establishing that diversity jurisdiction exists as to Virginia Pocahontas.[3]

However, the court does not believe that *Mullins* is necessarily dispositive of this case. Since February, 1968 there have been some significant changes in the corporate

organization of Beatrice which potentially affect the court's earlier conclusion that under the "home office or nerve center" test Beatrice was not a Virginia corporation. In addition, unlike *Mullins*, the present case does not have the equitable considerations associated with it which to a substantial degree influenced the disposition of the jurisdictional question under the "place of operations" test. Finally, the court does not believe that the Court of Appeals' affirmance of the merits of *Mullins* in an unpublished three-sentence statement which made no reference to the jurisdictional issue is to be read as authority on the jurisdictional question. See *Jones v. Superintendent,* 2 Cir., 465 F.2d 1091, cert. denied 410 U.S. 944, 93 S.Ct. 1380, 35 L.Ed.2d 611 (1973). Therefore, although this court's decision in *Mullins* is not to be disregarded as precedent in support of plaintiffs' position, in light of the aforementioned considerations, the court will reconsider the jurisdictional question in detail.

Based on the evidence of record the court finds the pertinent facts as to the principal place of business of Beatrice and Virginia in November, 1975 to be as follows:

1. Beatrice is a joint venture corporation with 50% of its stock owned by Island Creek Coal Company and the other 50% owned by Republic Steel Corporation.

2. Virginia Pocahontas is a joint venture corporation with 75% of its stock owned by Island Creek Coal Company and 25% owned by Jones & Laughlin Steel Corporation.

3. The only business engaged in by Beatrice and Virginia Pocahontas is the mining of coal in Buchanan County, Virginia. Each corporation operates a single mine. Of the coal mined by Beatrice, 50% is sold to Island Creek and the other 50% is sold to Republic Steel with title passing at the mine. In the case of Virginia Pocahontas, 75% of the coal produced becomes the property

---

3. There is no dispute as to plaintiffs' assertion that Island Creek is not a Virginia corporation under 28 U.S.C. § 1332.

of Island Creek at the mine and the other 25% becomes the property of Jones & Laughlin Steel Company at the mine.

4. Island Creek owns the mineral leases for the land mined by Beatrice and Virginia Pocahontas and sub-leases these mineral rights to Beatrice and Virginia Pocahontas.

5. The Board of Directors of Beatrice is composed of eight persons, four of whom are nominated by Island Creek and four of whom are nominated by Republic Steel. The Board of Directors of Virginia Pocahontas is composed of six persons, four of whom are nominated by Island Creek and two of whom are nominated by Jones & Laughlin. The members of the Boards of Directors of Beatrice and Virginia Pocahontas nominated by Island Creek are the same individuals. These Boards of Directors generally meet in Cleveland, Ohio.

6. Island Creek has management contracts with Beatrice and Virginia Pocahontas pursuant to which it provides management services in return for a management fee which is calculated on the basis of the amount of coal produced.

7. Island Creek is a wholly-owned subsidiary of Occidental Petroleum, a corporation with interests in coal, oil and chemicals with its corporate headquarters and principal offices in Los Angeles, California. Island Creek's corporate headquarters is in Lexington, Kentucky. It operates mines in four states plus some retail stores which primarily serve the miners.

8. Island Creek has four operating divisions of which one, known as the "Virginia Pocahontas Division",[4] manages five mines in Buchanan County, Virginia. Three of these mines are owned by Island Creek and the other two, Beatrice and Virginia Pocahontas, are owned in part as stated above and managed pursuant to management contracts. All of the mines are managed in the same manner.

9. The headquarters for Island Creek's Virginia Pocahontas Division is Keen Mountain in Buchanan County, Virginia, and it is from this headquarters that the day-to-day operations of Beatrice and Virginia Pocahontas are directed.[5]

10. Both Beatrice and Virginia Pocahontas employ mine superintendents at their respective mines in Buchanan County. These individuals are responsible for routine day-to-day operations at the mines, but are subject to control by Island Creek's Division President of the Virginia Pocahontas Division who is also stationed at Keen Mountain. For example, routine labor matters are handled by the mine superintendents, but labor decisions affecting more than one employee are handled by the Division President. For the most part, financial matters of Beatrice and Virginia Pocahontas are directed through Island Creek's Lexington office, although the payroll is prepared at Keen Mountain for both Virginia Pocahontas and Beatrice. Engineering functions are performed by employees of Beatrice and Virginia Pocahontas, but major engineering matters are performed through Island Creek employees either at Keen Mountain or in Lexington. Purchasing, warehousing and safety decisions are handled primarily at Keen Mountain by Island Creek employees, although employees of Beatrice and Virginia Pocahontas have lower-level responsibilities in these matters.

11. Capital expenditures for Beatrice and Virginia Pocahontas must be approved by their respective Boards of

4. This is not to be confused with the Virginia Pocahontas Company which is a part of Island Creek's Virginia Pocahontas Division.

5. In February, 1968, the jurisdictional date in the Mullins case, the day-to-day operations for Beatrice and Virginia Pocahontas were directed from Holden, West Virginia.

Directors, with Island Creek employees making the actual purchases. All leases for mineral rights are negotiated by Island Creek.

12. Island Creek's management decisions under its management contracts with Beatrice and Virginia Pocahontas are subject to direction by the Boards of Directors of these corporations.

13. The original capital investment in Beatrice was $1000 with the major capital investment in the form of two loans totalling approximately $15 million. Its indebtedness as of December 31, 1975 was approximately $3.4 million and its total assets were $41,612,000. All of Beatrice's assets are located in Buchanan County, Virginia except for its bank accounts. Approximately 88% of its bank funds are kept in Cleveland, Ohio and the remaining 12% are deposited in Virginia banks.

14. The original capital investment in Virginia Pocahontas was $5000 with its major capital being in the form of two loans of $10,000,000 each. As of December 31, 1975 its indebtedness was approximately $11,300,000. All of the assets of Virginia Pocahontas are located in Buchanan County, Virginia except its bank accounts, 99% of which are in states other than Virginia.

15. As of October 31, 1975 Virginia Pocahontas employed 51 non-union employees and 298 union employees. All of these employees worked in Virginia. As of October 31, 1975 Beatrice employed 72 non-union employees and 443 union employees, all of whom worked in Virginia.

16. Labor contracts for Beatrice and Virginia Pocahontas are negotiated in Washington, D. C. by representatives of the United Mine Workers and the Bituminous Coal Operators Association.

17. A significant difference between Beatrice and Virginia Pocahontas is that Virginia Pocahontas is operated as a "cost corporation" pursuant to a ruling by the Internal Revenue Service. As a "cost corporation" it has no net income, but rather each of its stockholders receive a proportionate share of the coal it mines and each pays its proportionate share of expenses. In contrast, Beatrice produces a net income which is distributed to its stockholders.

In *Mullins, supra* the court discussed and applied both the "home office or nerve center" test and the "place of operations" test for determining the principal place of business of Beatrice in February, 1968. However, as discussed in 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3625 at 794–798 (1975) the judicial decisions which developed these tests [6]

. . . can be viewed as particular applications of the general rule that the bulk of corporate activity, as evidenced by the location of daily operating and management activities, governs the choice of a principal place of business. Consequently when a corporation is engaged in a single line of business with its operating functions located in one state and executive and administrative offices in another state, its principal place of business for diversity purposes is the former state. Similarly, when a corporation divides its operations among more than one state, but its activities in one of those states clearly exceed all the activities in other states, the state with the largest volume of operations is the principal place of business. If, however, managerial control, as well as actual operations, is split among several states or is located in the same state as the executive offices, then the site of executive and administrative offices should be relied upon to determine a corporation's principal place of business for purposes of diversity jurisdiction. For example, this result is appropriate particularly in cases involving holding companies that own and control

6. The so-called "nerve center" test was first developed in *Scot Typewriter Co. v. Underwood Corp.*, 170 F.Supp. 862 (S.D.N.Y.1959) and the "place of operations" test was first applied in *Kelly v. United States Steel Corp.*, 284 F.2d 850 (3d Cir. 1960).

several different subsidiary corporations. (footnotes omitted).

In the present case, both Beatrice and Virginia Pocahontas are corporations whose only corporate activity and purpose is mining coal in Buchanan County, Virginia. With the exception of bank accounts, the considerable assets of both of these corporations are located solely in Buchanan County, Virginia. In addition, unlike the situation in *Mullins,* the day-to-day management operations of these corporations were directed from Buchanan County, Virginia. The actual mining of coal and the lower-level management of these corporations took place in Virginia by employees of these corporations stationed at Keen Mountain, Virginia. It is of course true that the ultimate management responsibilities of these corporations rested with Island Creek pursuant to management contracts, however the Island Creek employees primarily involved in the day-to-day management of Beatrice and Virginia Pocahontas were also stationed at Keen Mountain, Virginia.

It is thus clear that the bulk of corporate activity of Beatrice and Virginia Pocahontas, including both management and production, are in Virginia. The fact that some management responsibilities for these corporations are exercised by Island Creek at its Lexington, Kentucky headquarters; that their Boards of Directors meet in Cleveland, Ohio; that their primary bank accounts are not in Virginia; and that these corporations exclusively serve their parent corporations which are located in states other than Virginia are clearly pertinent considerations, but these factors do not overcome the fact that as separate corporations Beatrice and Virginia Pocahontas clearly have Virginia as their principal places of business. It is simply impossible to conceive of any state other than Virginia which, in terms of corporate activities, could qualify as their principal place of business. In *Riggs v. Island Creek Coal Co.,* 387 F.Supp. 1363 at 1365 (S.D.Ohio 1974) the court considered the contention of Island Creek Coal Company that its princi-

pal place of business was Ohio, where its corporate headquarters was then located, and stated:

> Indeed, a very clear rule of law applies to mining corporations such as is present in this case. A mining corporation is, for diversity purposes, a citizen of the state where most of its work, land, buildings, inventory, employees, equipment and machinery are located, [citations omitted].

This statement of law is of course even more applicable to the case at bar in which the assets and work of the subject mining corporations are located only in one state. See also, *National Spinning Co. v. City of Washington,* 312 F.Supp. 958 (E.D.N.C. 1970).

Plaintiffs have argued that because of the relationship between Beatrice and Virginia Pocahontas and their parent corporations, their corporate veils should be pierced for the purpose of determining their principal places of business. Without question there is a significant interrelationship between Island Creek and Beatrice and Island Creek and Virginia Pocahontas. However, these corporations are not wholly-owned subsidiaries; 50% of the stock of Beatrice is owned by Republic Steel and 25% of the stock of Virginia Pocahontas is owned by Jones & Laughlin Steel Corporation. Both Virginia Pocahontas and Beatrice have their own employees and maintain books and accounts separate from those of their parent corporations. The fact that Island Creek exercises management control over Beatrice and Virginia Pocahontas through management contracts rather than directly is indicative of their separate corporate identities. The court is of the opinion that the separate corporate identities of Beatrice and Virginia Pocahontas should not be disregarded for purposes of determining jurisdiction. As stated in *Lurie Co. v. Loew's San Francisco Hotel Corp.,* 315 F.Supp. 405 at 410 (N.D.Cal. 1970);

> . . . where the corporate separation between a parent and subsidiary, 'though perhaps merely formal', is 'real' and care-

fully maintained, the separate place of business of the subsidiary is recognized in determining jurisdiction, even though the parent corporation exerts a high degree of control through ownership or otherwise.

Similarly, in *Quaker State Dye & Finishing Co. v. ITT Terryphone Corp.*, 461 F.2d 1140 (3d Cir. 1972) the court refused to disregard the separate corporate existence of a wholly-owned subsidiary for purposes of determining whether diversity jurisdiction existed. The situation at bar presents a perhaps even stronger case in that neither Beatrice nor Virginia Pocahontas is wholly owned by another corporation. Every indication is that these corporations are organized, owned and operated in the manner described above out of legitimate considerations of efficiency and convenience and not to avoid liability or defeat public convenience. See *Coles v. Humble Oil & Refining Co.*, 348 F.Supp. 1240 (S.D.Tex.1972). The court accordingly rejects plaintiffs' contention that the separate corporate existences of Beatrice and Virginia Pocahontas should be disregarded.

For the reasons and authority stated it is the determination of the court that the "principal place of business" of Beatrice and Virginia Pocahontas is Buchanan County, Virginia and that jurisdiction in this court under 28 U.S.C. § 1332 is not available. Accordingly, these four cases are dismissed for lack of subject matter jurisdiction.