**UNITED NUCLEAR CORPORATION, a Delaware corporation, Appellant,**

v.

**MOKI OIL AND RARE METALS CO., a New Mexico corporation, Appellee.**

**No. 8307.**

United States Court of Appeals
Tenth Circuit.

July 25, 1966.

N. Carpenter, Arthur H. Coleman and Bigbee & Byrd, Santa Fe, N. M., on the brief), for appellant.

Robert L. Blumenthal, Dallas, Tex. (Lewis R. Sutin, Robert W. Botts, Sutin & Jones, Botts, Botts & Mauney, Albuquerque, N. M., and Carrington, Johnson & Stephens, Dallas, Tex., on the brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

This is a diversity action brought by Moki Oil & Rare Metals Company,[1] a New Mexico corporation, against Phillips Petroleum Company [2] and United Nuclear Corporation,[3] both Delaware corporations.

28 U.S.C.A. § 1332 in part here material reads:

"*§ 1332. Diversity of citizenship; amount in controversy; costs*

"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

"(1) citizens of different States;

\* \* \* \* \* \*

"(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business: \* \* \*"

The complaint alleged that Nuclear had its principal place of business at New York City, New York. Nuclear filed a motion to dismiss the action on the ground that it had its principal place of business in New Mexico. In order to give district courts original jurisdiction

Harry L. Bigbee, Santa Fe, N. M. (Harl D. Byrd, G. Stanley Crout, Richard

1. Hereinafter called Moki.

2. Hereinafter called Phillips.

3. Hereinafter called Nuclear.

under § 1332, supra, the citizenship of all parties on one side of the case or controversy must be diverse to those on the other side.[4]

After the motion challenging the jurisdiction was filed by Nuclear, Moki filed an amended complaint in which it set up that Nuclear had its principal place of business in the State of Maryland or in the State of New York.[5] Thereupon, Nuclear filed an amended motion to dismiss on the ground that it has its principal place of business in New Mexico.

The amended motion came on for hearing before the court upon affidavits filed by Nuclear and Moki, exhibits introduced in evidence, and portions of certain depositions taken in the cause. The court found that Nuclear had its principal place of business in a state other than the State of New Mexico, and therefore complete diversity of jurisdiction existed between Moki and Phillips and Nuclear.

Subsection (c) of § 1332, supra, was embraced in a proposed bill drafted by a committee of the Judicial Conference of the United States. The Judicial Conference approved the draft bill and forwarded copies thereof to appropriate officers of the House and Senate, with the recommendation that it be enacted by the Congress.[6]

The phrase "principal place of business" was taken from the jurisdictional section of the Bankruptcy Act (July 1, 1898, 30 Stat. 545, 11 U.S.C.A. § 11(a) (1)), because there existed a large body of bankruptcy decisions interpreting its meaning.[7]

The phrase also appears in the venue section of the Natural Gas Act (June 21, 1938, § 19(b), 52 Stat. 831, 15 U.S.C.A. § 717r(b)), providing for court review of orders of the Federal Power Commission.

Where the corporation has its principal place of business is a question of fact to be determined by "the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations." [8]

Where a corporation carries on its business in a number of states, no one of which is clearly the state in which its business is principally conducted, the state where a substantial part of its business is transacted and from which centralized general supervision of all of its business is exercised, is the state in which it has its principal place of business.[9]

There is no substantial dispute in the facts. Nuclear is a vertically integrated nuclear company, the activities and interests of which cover the full spectrum of the nuclear industry, from mining, milling and fuel processing to reactor utilization and waste management.

It has five divisions, for the most part geographically separated and all reporting to the executive office of the corporation independently of each other, except the Chemicals Division, which reports to the Vice President of the Fuels Division.

The Mining and Milling Division operates the uranium mines owned by Nuclear, located in New Mexico, and manages the mineral properties of Nuclear in other states. It also handles dealings

---

4. Indianapolis v. Chase National Bank, 314 U.S. 63, 69, 62 S.Ct. 15, 86 L.Ed. 47; Mathers & Mathers v. Urschel, 10 Cir., 74 F.2d 591, 592.

5. The complaint and amended complaint alleged that Phillips had its principal place of business in Bartlesville, Oklahoma, and that allegation is not challenged.

6. U. S. Code Congressional and Administrative News, Vol. 2, 85th Cong., 2d Session, 1958, pp. 3102, 3133–3136.

7. U. S. Code Congressional and Administrative News, supra, p. 3102.

8. Colorado Interstate Gas Co. v. Federal Power Commission, 10 Cir., 142 F.2d 943, 951; Scot Typewriter Co. v. Underwood Corp., D.C.S.D.N.Y., 170 F.Supp. 862, 864; Chicago Bank of Commerce v. Carter, 8 Cir., 61 F.2d 986, 988.

9. Chicago Bank of Commerce, supra, at 988, 989; Dryden v. Ranger Refining & Pipe Line Co., 5 Cir., 280 F. 257, 262, 263; Scot Typewriter Co. v. Underwood Corp., supra, at 865; See also: Egan v. American Airlines, Inc., 324 F.2d 565, 566; Kelly v. United States Steel Corporation, 3 Cir., 284 F.2d 850, 854.

between Nuclear and a limited partnership, Homestake-Sapin Partners, in which Homestake Mining Company is the general and managing partner and Nuclear is the limited partner. The Vice President of the Mining and Milling Division has offices in Santa Fe, New Mexico. The operation of such division is under the direction of its Vice President and his staff at Santa Fe, New Mexico, but such operation is subject to the general direction and supervision of the superior executive officers of Nuclear, as is the operation of all the other divisions hereinafter mentioned.

The Fuels Division maintains a manufacturing facility in New Haven, Connecticut, an assembly plant in Montville, Connecticut, and supervises a cold scrap reprocessing plant in Rhode Island. It also supervises a Chemical Division, located in Missouri. The Fuels Division is active in every area of nuclear fuel preparation, fabricating and recovery. It is operated under the direction of its Vice President, who maintains an office at New Haven, Connecticut.

The Development Division is operated out of an office in White Plains, New York, and has a facility in White Plains and another in Pawling, New York. It is engaged in nuclear research and development for the United States Government, the development of commercial nuclear power plants for maritime use, for water desalting and small electric generating stations, and other projects involving advanced technology, and has classified contracts with space and defense agencies. It is operated under the direction of a Vice President in charge of Development.

The Chemical Division, located in Missouri, is operated under the direction of the Vice President in charge of the Fuels Division. It maintains a plant in Hematite, Missouri, which processes fuel for reactor cores out of enriched uranium, and for reprocessing scrapped uranium.

The Shielding Division is operated by a wholly-owned subsidiary, Ray Proof Corporation, the plant or office of which is located at Stamford, Connecticut, and is under the direction of the President of such subsidiary. It produces standard industrial products for shielding against X-ray and Gamma radiation, radio frequency vibration, and acoustic interference.

Up to the middle of 1963, Nuclear maintained its principal executive offices at White Plains, New York. In August, 1963, it moved its principal executive offices to Centreville, Maryland. The situs of the Maryland executive offices of Nuclear is a farm of approximately 1,700 acres, owned by it. The President and Chief Executive Officer and the Vice President and Treasurer live in homes owned by Nuclear and situated on such farm. The Senior Vice President and the Vice President in charge of Administration reside in Centreville. All of such executives have offices in an office building owned by Nuclear and located on such farm.

The executive headquarters at Centreville is the hub where corporate policies are formulated and important corporate contracts are finalized, and from which supervision and direction emanate, to be conformed to and carried out by the local managers of the several divisions.

Offices are also maintained in New York City, formerly the corporate headquarters of Nuclear. They are in charge of the Chairman of the Board of Nuclear.

The 1962 Annual Report of Nuclear lists 14 persons as officers of the corporation, including the Chairman of the Board, the President and Chief Executive Officer, the Executive Vice President, eight Vice Presidents, a Secretary and a General Counsel. That report and the 1963 Annual Report of Nuclear show that only one of its corporate officers, the Vice President of the Mining and Milling Division, lives and works in New Mexico.

A majority of the employees of the corporation lives in states other than New Mexico.[10]

The product of the Mining and Milling Division is sold to the Atomic Energy Commission and is delivered to it in Missouri. All of the proceeds of such sales are paid directly to the Chase Manhattan Bank in New York and the Mining and Milling Division receives only that part thereof required by it to carry on its operations. Sales to the Atomic Energy Commission differ from ordinary sales. The Mining and Milling Division does not require and does not maintain a highly organized and trained sales force, as do the other divisions that engage in the sale of products. The principal marketing office is located in Washington, D. C. Corporate tax returns are filed in Maryland. Publicity and public relations activities are handled from New York. Pension and profit sharing plans for all employees, except those in the Mining and Milling Division are directed from the New York office.

From April 1, 1962, until the date of the filing of this action, August 2, 1963, six meetings of Directors of Nuclear were held. Of these, one was called for a meeting in New Mexico on September 21, 1962. It had to be recessed for lack of a quorum. The remaining five directors' meetings were held in New York City. In that same period, six meetings of the Executive Committee of Nuclear were held. One was held in New Mexico, the other five in New York City.

In the light of the foregoing facts and the deductions which may reasonably be drawn therefrom, we do not think it can be said that the trial court erred in finding that the principal place of business of Nuclear was not located in New Mexico, or that it erred in its conclusion of law that the Court had jurisdiction of the action.[11]

Affirmed.

---

10. Counsel for Nuclear contend that a majority of its employees lives in New Mexico. Their contention would be correct if the employees of the Homestake-Sapin Partnership are employees of Nuclear. In that partnership, Nuclear is a limited partner. Homestake-Sapin is a separate entity from Nuclear. Nuclear does not control the employees of the partnership. They should not be regarded as employees of Nuclear. Moreover, the location of a majority of the employees would be only one element to be considered in determining the principal place of business of Nuclear.

11. It was not necessary for the court to decide in what other state than New Mexico Nuclear had its principal place of business. Unger v. Del E. Webb Corporation, D.C.N.D.Cal., 233 F.Supp. 713, 715; Textron Electronics, Inc. v. Unholtz-Dickie Corporation, D.C.Conn., 193 F.Supp. 456, 460. However, we think the evidence established that the principal place of business of Nuclear was located in Maryland.