**Gene E. LUKE, Plaintiff,**

v.

**WESTERN DAIRYMEN COOPERATIVE INC., a Colorado corporation, and Meadow Gold Dairies, Inc., a Delaware corporation, Defendants.**

**Civ. No. 89–C–552A.**

United States District Court,
D. Utah, C.D.

April 9, 1990.

James C. Haskins, Haskins & Associates Murray, Utah, Robert D. Moore, Kevin M. McDonough, Moore, McDonough & Norton, Salt Lake City, Utah, for plaintiff.

Daniel L. Berman, Douglas L. Parry, Berman & O'Rorke Salt Lake City, Utah, for defendants.

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

### INTRODUCTION

ALDON J. ANDERSON, Senior District Judge.

In response to the plaintiff's complaint, defendant Western Dairymen Cooperative, Inc. (WDCI) moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) alleging that this court lacks subject matter jurisdiction. More precisely, jurisdiction is premised on diversity and WDCI claims that the plaintiff, Gene E. Luke, a resident of Utah, shares the same citizenship as WDCI because WDCI's principal place of business is Utah. The plaintiff, on the other hand, claims that WDCI's principal place of business is Colorado.

The court allowed discovery to proceed on this issue, and presided at an evidentiary hearing concerning this matter on March 13, 1990. At the conclusion of that hearing, the court took the matter under advisement. Having familiarized itself with the law and the facts of this case, the court is now prepared to issue its ruling. For reasons stated below, the court finds that WDCI's principal place of business is Utah and, therefore, that WDCI and the plaintiff share the same citizenship. Thus, diversity is destroyed and WDCI's motion to dismiss is granted.

### FACTS

The parties stipulated to several facts, many of them material to the present analysis. The stipulated facts are as follows:

(a) The Complaint in this action was filed on June 19, 1989.

(b) The Plaintiff Gene Luke resides in and is a citizen of the State of Utah.

(c) The Defendant WDCI is a dairymen's cooperative of approximately 1347 milk producers incorporated in the State of Colorado.

(d) The Board of Directors of WDCI formulates overall general corporate policy and makes rules and regulations for the management of the business and guidance of WDCI. The Board of Directors is responsible for approving and/or modifying all final budgeting decisions. (Plaintiff contends that the Board "exercises general supervision and control over the business and affairs of the association" and relies on Article V, Section 10 of the Bylaws for this contention.)

(e) The Board is comprised of dairymen association members who are elected, one each, from 32 representative districts located in the states of Utah, Colorado, Idaho and Wyoming. Of the 32 members of the Board, 13 reside in Colorado, 9 reside in Utah, 8 reside in Idaho, 2 reside in Wyoming. The Board has six officers, three are from Utah, two from Colorado and one from Idaho. A member of the Board of Directors may not be a salaried officer of WDCI. (WDCI Bylaws, Art. V § 15.) The Board of Directors meets half the time in Utah and half the time in Colorado, generally alternating the place of its meetings, one month meeting in Utah and the next month in Colorado.

(f) The Board of Directors is comprised of four policy committees, including an Executive, Finance and Transportation, Personnel, and a Producer Service Committee. The chairmen of these committees are elected from and by the Board upon recommendation of the Executive Committee. At present three of the four chairmen are from Colorado. Board committees meet the day before, and in the same location as the monthly meeting of the full Board. They review operations and formulate policy proposals to be presented to the Board for consideration the next day. Of the twelve committees of WDCI's Board of Directors, ten have a chairman residing in Colorado. Three of these committees are involved in matters exclusive to Colorado.

(g) The Bylaws provide that under the direction of the Board of Directors, the General Manager shall have general charge of the ordinary and usual business operations of WDCI including purchasing and marketing of WDCI products. (WDCI Bylaws, Art. VIII § 2.)

(h) WDCI's general manager and chief executive officer is Leland Anderson who resides and has his office in Salt Lake City, Utah. Mr. Anderson, as Chief Executive Officer, is responsible for the day-to-day operation of WDCI. He is responsible for all business operations of WDCI, including hiring, supervising and dismissing all employees. It is to him that management and all other employees report, including the heads of all operating divisions, the Chief Financial Officer, and Controller. Lee Mortensen, Senior Vice President and Chief Financial Officer of WDCI is responsible for obtaining financing for WDCI and for supervising and directing the major day-to-day decisions as related to financial matters. The actual day-to-day financial operation of WDCI is performed by the Controllers. The corporate controller and the controllers for the Cheese and Fluid Milk Divisions are located in Utah. The controller for the Raw Milk Division is located in Colorado. Of WDCI's "management staff" nine are located in Utah, five are located in Colorado. (Plaintiff contends that the ultimate control, in fact, rests with James P. Camerlo as President of the Board of Directors, and further contends that they have exercised this control in the past. Defendant disagrees.)

(i) WDCI has two corporate offices, one located in Salt Lake City, Utah and one located in Thornton, Colorado.

(j) WDCI has 1,403 employees. Of these, 899 or 64.2% are located and employed within the State of Utah; 171 or 12.2% within Wyoming; 157 or 11.2% within Colorado; 124 or 8.9% within Idaho; 38 or 2.7% within Nevada; 7 or 0.5% within Arizona; and 5 or 0.4% are located in the State of Nebraska.

(k) WDCI is comprised of six operating divisions. The Administrative Division, Fluid Milk Division, and Cheese Divisions are headquartered in the State of Utah. The Raw Milk and the Transportation Divisions are headquartered in Colorado, but have two offices, both in Colorado and in Utah. The Transportation Division is officed both in Colorado and Utah, handling the collection and delivery of the raw milk in the Eastern and Western Pool respectively. The Vice President of Transportation resides in Colorado, but the records for the Division are maintained in Utah. The Warehouse Division has two stores, one located in Utah and one in Colorado. The records for this Division are also located in Utah.

(*l*) WDCI's Fluid Milk Division is headquartered in Salt Lake City, Utah and operates four Fluid Milk processing plants. These plants are located in Salt Lake City, Utah; Ogden, Utah; Logandale, Nevada; and Riverton, Wyoming. WDCI does not have any milk processing or packaging plants located in Colorado.

(m) WDCI's Cheese Division is headquartered in Utah and operates five cheese plants; two, the Beaver and Amalga plants are located in Utah. In addition, from its headquarters in Utah, the Cheese Division operates cheese processing plants in Twin Falls and Idaho Falls, Idaho and in Thayne, Wyoming. WDCI operates no cheese plants in Colorado.

(n) The Raw Milk Division is headquartered in Thornton, Colorado. It has two offices, one located in Thornton, Colorado, the other in Salt Lake City, Utah. This Division has two Vice Presidents, one located in Utah and the other in Colorado. The records of this Division are maintained in Colorado and payments to the producers for the purchase of raw milk are made from the Colorado office. Further, the Board of Directors set[s] the price to be paid to the producers for raw milk. The collection and sale of raw milk by this Division is divided into two "pools" along a north-south line extending from the Utah–Colorado border. All producers west of that line are in the Western Pool; all producers east of that line are in the Eastern Pool. The Salt Lake office under one vice president, handles the procurement and sale of raw milk within the Western Pool. The Thornton, Colorado office, with its vice president, handles the procurement and sale of raw milk procured from the producers in the Western Pool.

(*o*) The Western Pool of WDCI's Raw Milk Division procures and processes raw milk from 881 or 65.4% of WDCI's producers. The Eastern Pool collects milk from 466 or 34.6% of WDCI's dairymen producers. The State of Colorado produces more raw milk for WDCI than any other state in the cooperative. The Raw Milk Division produces approximately 45% of WDCI's revenues and the Transportation Division accounts for approximately 3.8%. Sixty percent of this revenue is generated from raw milk procured and sold by the Raw Milk Division's Western Pool office in Salt Lake City. The Raw Milk Division distributes all proceeds from the sale of raw milk to WDCI's member dairy farmer producers. It makes no contribution toward WDCI's gross profits. The Raw Milk Division, Eastern Pool, sells raw milk to 30 customers, five are located in Colorado. The Raw Milk Division, Western Pool, in addition to providing raw milk to WDCI's processing plants, sells raw milk to 35 customers, eight are located in Utah.

(p) WDCI's Cheese and Fluid Milk Divisions, from their offices located in

Utah, sell over one thousand products to over 5,200 customers. Approximately 3,264 or 62.2% of these customers are located in Utah; 853 or 16.3% are located in Wyoming; 569 or 10.8% in Idaho; 392 or 7.5% in Nevada; and only 63 or 1.2% of WDCI customers are located in Colorado. Products sold through the Utah offices of WDCI account for 63% of WDCI's gross margins. WDCI markets products in Utah under its own brand names, including Cream o' Weber, Hi–Land, and Cache Valley Cheese.

(q) WDCI's Transportation Division has two offices. The Vice President of Transportation resides in Colorado. The records for this division are maintained in Utah. This division is responsible for collecting milk from WDCI's member producers. The Colorado office directs the collection of raw milk in the Eastern Pool and the Salt Lake office directs collection within the Western Pool. The majority of WDCI's trucks and transportation facilities are located in the Western Pool, as over 69% of all milk collected by the Raw Milk Division is collected from producers in the Western Pool and delivered to WDCI's plants and customers located in Utah, Idaho, Wyoming and Nevada.

(r) The Administrative Division is headquartered in Salt Lake City, Utah. The general ledgers and other records of WDCI's operations are maintained in the Salt Lake City office. The payroll for all WDCI employees and all operating expenses of WDCI are paid from WDCI's Salt Lake City, Utah office. WDCI's computer located in Salt Lake City maintains the financial and operational records for all of WDCI's operating divisions. The Cheese Division also maintains a computer in Amalga, Utah and the Raw Milk Division operates its computer in Thornton, Colorado. The Raw Milk and Transportation Divisions maintain records of their operations in Colorado.

(s) Management decisions for the Administrative, Fluid Milk and Cheese Divisions are made in Utah. Management decisions for the Raw Milk, Warehouse, and Transportation Divisions are made both in Colorado and Utah. All division managers and vice presidents report to the General Manager in Salt Lake City, Utah.

(t) WDCI's general bank account is located at First Security Bank in Salt Lake City, Utah. All other bank accounts are either depository accounts which transfer all of their money to the main account in Salt Lake City, Utah at close of business, or petty operating accounts which receive their operational monies from the First Security account in Salt Lake City, Utah. All draws on WDCI's line of credit at the Wichita State Bank and repayments on that line are made through the First Security Bank account in Salt Lake City. The decision to draw on the line of credit is made by the Cash Manager located in the Salt Lake office with approval of the Controller in Salt Lake City who ultimately reports to the Chief Financial Officer who resides in Colorado.

(u) The Raw Milk Division maintains a separate bank account at the Colorado National Bank in Denver, Colorado. Into this account is deposited the proceeds from the sale of WDCI's raw milk to outside handlers and from which payment for raw milk to WDCI's member producers is made. Because the Salt Lake office handles WDCI's cash management, funds are not maintained in this account. Revenue not immediately needed to pay producers is transferred from this account to the account at First Security Bank in Salt Lake City, Utah or is used to pay down WDCI's line of credit. When funds are needed to meet producer payments, funds are transferred from WDCI's account at First Security Bank or from the line of credit to the Colorado National Bank account.

(v) During the month of June 1989, WDCI deposited a total of approximately $28,-000,000 into its account with First Se-

curity Bank of Utah. During that same period of time, WDCI deposited over $54,000,000 into its account with Colorado National Bank, Denver, Colorado. Over $36,000,000 of the amount deposited in the Colorado National Bank account during June was transferred into that account from WDCI's account at First Security Bank in Salt Lake City, Utah.

(w) WDCI's assets are located primarily in Utah. $32.6 million, or 65% of the book value of WDCI's assets are located in the State of Utah. WDCI has assets valued at $7.6 million or 15.4% located in Idaho and $4.8 million in assets or 9.7% of the total assets are located in Colorado. The remaining assets are located in Wyoming, $3 million or 6.2%; Nevada, $1 million or 2.2%; and Arizona, $345,000 or 0.7%.

(x) Purchase of media advertising time or space for WDCI is made through Western Ag Marketing, Inc. The individual who actually purchases the media time resides in Colorado.

(y) WDCI employs an accounting firm which resides in Colorado. WDCI does not employ an accounting firm out of Utah. Of firms located in Colorado and Utah submitting bids for WDCI's account, the Colorado firm was the lower bidder. The accounting firm is paid by the Salt Lake office.

Stipulation of Facts and Propositions of Law Re Subject Matter Jurisdiction, ¶ 3, at 3–12.

## ANALYSIS

Jurisdiction in this case is predicated on diversity pursuant to 28 U.S.C. § 1332(a). Subsection (c) of section 1332 provides that corporations have dual citizenship—the state of incorporation and the state of the corporation's principal place of business. 28 U.S.C. § 1332(c). The plaintiff's citizenship is Utah and WDCI claims that its principal place of business is Utah as well, thus destroying diversity. Plaintiff, on the other hand, claims that WDCI's principal place of business is Colorado. As noted above, the sole issue in this case is determining the location of WDCI's principal place of business.

Concerning proof of this matter, the plaintiff bears the ultimate burden of proof. In *Basso v. Utah Power and Light Co.*, 495 F.2d 906, 909 (10th Cir.1974), the Tenth Circuit noted that "the party invoking the federal court's jurisdiction bears the burden of proof." The court reasoned that, because federal courts are courts of limited jurisdiction, a presumption exists against federal court jurisdiction. *Id.*

Turning now to the substance of the dispute, the court's analysis begins with the established proposition that

Where the corporation has its principal place of business is a question of fact to be determined by "the character of the corporation, its purposes, the kind of business in which it is engaged, and the situs of its operations."

Where a corporation carries on its business in a number of states, no one of which is clearly the state in which its business is principally conducted, the state where a substantial part of its business is transacted and from which centralized general supervision of all of its business is exercised, is the state in which it has its principal place of business.

*United Nuclear Corp. v. Moki Oil and Rare Metals Co.*, 364 F.2d 568, 570 (10th Cir.) (footnotes omitted), *cert. denied*, 385 U.S. 960, 87 S.Ct. 393, 17 L.Ed.2d 306 (1966). The latter quoted portion, discussing a corporation whose activities cross state lines, is directly applicable here as WDCI transacts business in several states. In this regard, for purposes of diversity jurisdiction, every corporation has one and only one principal place of business. *J.A. Olsen Co. v. City of Winona*, 818 F.2d 401, 406 (5th Cir.1987).

Although courts have promulgated various "tests" to determine a corporation's principal place of business for diversity purposes, *see Co-efficient Energy Systems v. CSL Indus., Inc.*, 812 F.2d 556, 558 (9th Cir.1987), as the Fifth Circuit has noted, these tests are not determinative or narrowing but "simply stand for general rules

regarding the determination of a particular corporation's principal place of business." *J.A. Olsen,* 818 F.2d at 406, 409. As noted above, therefore, in this fact-specific analysis, the facts of the present case are the center of focus.

Helpful to the analysis are the factors considered in other cases. In *United Nuclear* and *Basso* the Tenth Circuit looked at several factors including the following:

1) location of corporate offices.

2) location of corporate assets.

3) location of manufacturing facilities.

4) residence of corporate directors, officers, and employees.

5) In *Moki,* as in the present case, the corporation was divided into several geographically separated divisions. The court in that case looked to where the divisions reported.

6) location of corporate bank accounts, including where the proceeds from sales are deposited.

7) where outside services such as accounting, advertising, and public relations are managed.

8) where Board of Directors meetings are held.

9) where the company's sales are made.

Most important in this court's opinion, however, is where the company is controlled, or where the general supervision is carried on. *See United Nuclear,* 364 F.2d at 570.

Analysis of these factors requires a finding that WDCI's principal place of business is Utah. The stipulated facts show that WDCI carries on a substantial portion of its business in Utah. The Chief Executive Officer resides and works in Utah. The parties also agree that this person is "responsible for the day-to-day operation of WDCI" and that he is responsible for "all business operations of WDCI, including hiring, supervising and dismissing all employees." All operating divisions also report to the Chief Executive Officer. Although some functions are performed in states other than Utah, the court is persuaded that the overall control remains in and emanates from Utah.

Furthermore, most of the other factors noted above also point toward Utah as the principal place of business. WDCI's primary business bank account is located in Utah and a majority of WDCI's funds pass through this bank. Payroll is paid out of the Salt Lake City office, the main computer is located in Utah, a majority of WDCI's assets are located in Utah, and most of the corporation's records are kept in Utah. Finally, the location of the Board of Directors' meetings is not determinative as the Board alternates its meeting place evenly between Utah and Colorado.

The plaintiff's primary argument is that WDCI is ultimately controlled by the Board of Directors, not the Chief Executive Officer. Although the Board properly retains control over WDCI, the court is persuaded that the "centralized general supervision" of the corporation occurs in Utah.

Other courts have held that the place where high level decisions are made is not determinative of a corporation's principal place of business, but instead should give way to the location of the corporation's actual activities. *See, e.g., Kelly v. United States Steel Corp.,* 284 F.2d 850, 854 (3rd Cir.1960) ("it is the activities rather than the occasional meeting of policy-making Directors which indicate the principal place of business."). Thus, just because more of WDCI's directors reside in Colorado, and more Board committees are chaired by Colorado directors, are unpersuasive facts given the previous finding that a majority of the corporation's activities occur in Utah.

In conclusion, the court holds that the general supervision of WDCI occurs in Utah and that WDCI's principal place of business is Utah. Therefore, as this finding destroys diversity between the plaintiff and WDCI, the court hereby grants WDCI's motion to dismiss.

IT IS SO ORDERED.